[No. S020115. Dec. 3, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS SCARTH McVICKERS, Defendant and Appellant.

**COUNSEL**

Richard Jay Moller, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General,

Harley D. Mayfield and Gary W. Schons, Assistant Attorneys General, Janelle B. Davis and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MOSK, J.—Penal Code section 1202.1 (hereafter section 1202.1) requires every person convicted of rape, statutory rape, spousal rape, sodomy, or oral copulation to submit to a blood test for evidence of acquired immune deficiency syndrome (AIDS). The statute (§ 1202.1, subd. (c)) allows a positive test result to be used to enhance the sentence for a subsequent conviction of any of the crimes listed above (see Pen. Code, § 12022.85).

We granted review in this case to determine whether the application of section 1202.1 to a defendant whose offense was committed prior to the statute's effective date (Jan. 1, 1989) violates the ex post facto clause of the federal Constitution (U.S. Const., art. I, § 10, cl. 1) or of the California Constitution (Cal. Const., art. I, § 9).

The Court of Appeal held that the proposed AIDS test was "punishment" within the meaning of the ex post facto clause, and thus that section 1202.1 could not be applied to this defendant. For the reasons discussed below we conclude the blood test cannot be considered "punishment," and hence the statute requiring that it be administered does not violate the ex post facto clause.

Defendant was convicted in April 1989 of various offenses involving sexual activity with minors, including several listed in section 1202.1, based on incidents occurring between 1983 and 1988. In July 1989 the court sentenced him to 23 years in prison and ordered a mandatory blood test for AIDS pursuant to section 1202.1.

Defendant appealed. The Court of Appeal affirmed the judgment, but, in a divided opinion, invoked the ex post facto clauses of the United States and California Constitutions to strike the order for blood testing. We granted review and directed the Court of Appeal to vacate its decision and to reconsider the cause in light of *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434] (hereafter *Tapia*), and *Collins* v. *Youngblood* (1990) 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715] (hereafter *Collins*). The court again affirmed the judgment and struck the AIDS testing order. We granted review for the second time, and now address defendant's contention that the proposed AIDS test is punishment for ex post facto purposes.

■ The United States Supreme Court has recently restructured its analysis of the ex post facto clause. As now interpreted, the clause prohibits three legislative categories: legislation " '[1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed . . . .' " (*Collins, supra,* 497 U.S. 37, 42 [111 L.Ed.2d 30, 39, 110 S.Ct. 2715, 2719], quoting *Beazell* v. *Ohio* (1925) 269 U.S. 167, 169 [70 L.Ed. 216, 217, 46 S.Ct. 68].) The court, returning the clause to its historical roots, overruled a line of prior cases holding that a law violates the ex post facto clause if it eliminates a "substantial protection" in place when the offense was committed. This court recently held that the ex post facto clause of the California Constitution is to be analyzed identically. (*Tapia, supra,* 53 Cal.3d 282, 295.)

■ Defendant does not challenge the use of the results of the AIDS test to enhance sentences for any later crimes. Rather, he contends the testing and disclosure provisions of section 1202.1 disadvantage him in violation of the ex post facto clause. He focuses on the added "burden" of the test, a focus that appears to be based on the now-defunct "substantial protection" analysis. To the extent that defendant relies, as he does, on pre-*Collins* cases, he is unpersuasive.

Under *Collins, supra,* 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715], the ex post facto clause prohibits not just a *burden* but a more burdensome *punishment.* Thus, at issue in the present case is the meaning of the word "punishment" as used in the second *Collins* category. The proper inquiry is whether the mandatory AIDS test makes defendant's punishment more burdensome and thus falls within the *Collins* prohibition. The Court of Appeal held that it did, stating that "The loss of significant rights as the result of a criminal conviction has long been considered 'punishment' for ex post facto purposes." Focusing its analysis solely on the statute's effect on defendant and not on the statute's purpose, it struck the order for blood testing as violative of the ex post facto clause.

Criteria for deciding whether or not legislation is punitive have yet to be fully developed. Commonly understood definitions of punishment are intuitive: there is little dispute that additional jail time or extra fines are punishment. (See, e.g., *Weaver* v. *Graham* (1981) 450 U.S. 24, 33-34 [67 L.Ed.2d 17, 25-26, 101 S.Ct. 960].) However, punishment has historically included a variety of methods limited only by human imagination, yet in situations going beyond traditional notions of punishment intuition alone does not provide adequate guidance. To determine whether an AIDS test should be

considered "punishment" within the meaning of *Collins*, we examine both the purposes served by the ban on ex post facto legislation and the manner in which the cases have defined punishment.

■ The prohibition against ex post facto legislation in the federal Constitution emanates, like many protections created by that document, from the excesses of colonial rulers "stimulated by ambition, or personal resentment and vindictive malice." (*Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 389 [1 L.Ed. 648, 649].) It serves two main purposes: first, "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" (*Weaver* v. *Graham, supra,* 450 U.S. 24, 28-29 [67 L.Ed.2d 17, 22-23]); and second, to restrict "governmental power by restraining arbitrary and potentially vindictive legislation" (*id.* at p. 29 [67 L.Ed.2d at p. 23]). The clause thus protects defendants from retrospective legislation with a punitive effect or purpose.

As noted above, *Collins, supra,* 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715], overruled cases holding that legislation violated the ex post facto clause if it eliminated "substantial protections." The categories it adopted dated back over half a century. But because the statute there in issue— allowing an appellate court to reform an improper verdict without a new trial—concededly did not fall into the prohibited categories, *Collins* itself furnishes no definitive answer to the question of the meaning of punishment.

Federal cases prior to *Collins* offer guidance in determining whether a statute is punitive. In *Trop* v. *Dulles* (1958) 356 U.S. 86, 96 [2 L.Ed.2d 630, 639, 78 S.Ct. 590], the plurality declared: "In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute. . . . [A] statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose." (Fns. omitted. See also *Flemming* v. *Nestor* (1960) 363 U.S. 603, 615-616 [4 L.Ed.2d 1435, 1446-1447, 80 S.Ct. 136].)

*Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144, 168-169 [9 L.Ed.2d 644, 660-661, 83 S.Ct. 554], considered several factors to determine whether or not a law was punitive: "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . ." (Fns. omitted.)

After *Collins, supra,* 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715], federal courts have applied the reasoning of early ex post facto cases to modern questions about the nature of punishment. *Jones* v. *Murray* (4th Cir. 1992) 962 F.2d 302 is an example. In that case, the court held that legislation requiring prisoners to donate blood samples for a DNA data bank did not violate the ex post facto clause as applied to prisoners who had committed their crimes before the legislation's effective date, provided that failure to submit to testing did not result in a postponement of mandatory parole. The court reasoned that " '[T]he requirement that prisoners provide blood samples is not punitive in nature. . . . The blood sample is taken and analyzed for the sole purpose of establishing a data bank which will aid future law enforcement.' " *(Id.* at p. 309.)

Similarly, *United States* v. *Bodre* (1st Cir. 1991) 948 F.2d 28 held that legislation altering judicial authority to recommend against deportation was not ex post facto as applied to an alien who committed the crime leading to deportation before the legislation was passed. The court observed that despite "the severe consequences that deportation may have on an alien, the Supreme Court has repeatedly held that deportation is not punishment for the commission of crimes." *(Id.* at p. 32.) Deportation, like DNA blood testing, appears to have a legitimate nonpunitive government purpose, and is thus not considered punitive despite its disadvantageous effect.

As noted above, in *Tapia, supra,* 53 Cal.3d 282, this court held that the state ex post facto clause was congruous with its federal counterpart. Thus, the three categories of *Collins, supra,* 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715], are the appropriate gauge of whether a statute is ex post facto under the state Constitution.

In a recent California case, the Court of Appeal applied *Collins* and *Tapia* to define punishment for ex post facto purposes. *In re Arafiles* (1992) 6 Cal.App.4th 1467 [8 Cal.Rptr.2d 492] upheld against an ex post facto challenge a recent constitutional amendment giving the Governor the power to modify or reverse parole decisions relating to convicted murderers, as applied to the Governor's reversal of a decision granting parole to a prisoner who had committed his crime before the amendment became effective. The court reasoned that the amendment did not necessarily disadvantage prisoners because it could also operate to the benefit of a prisoner whose parole had been denied by the parole authorities. *(Id.* at p. 1483.)

Post-*Collins* cases from other states have looked primarily to the purpose and then to the effect of a statute to determine if it is punitive. For example, in *State* v. *Burke* (1991) 109 Ore.App. 7 [818 P.2d 511], the court found no

ex post facto violation in a statute eliminating the possibility of setting aside a conviction of child abuse. Even though the statute had "both penal and nonpenal effects," its purpose, according to the legislative history, was nonpenal. (*Id.*, 818 P.2d at p. 517, conc. opn. of Edmonds, J.) Similarly, *Payne* v. *Fairfield Hills Hospital* (1990) 215 Conn. 675, 683 [578 A.2d 1025, 1029], noted that confinement of a person acquitted of a crime because of insanity is generally not punishment in the ex post facto context because its purposes are treatment for the individual and protection of society. *State* v. *Noble* (1992) 171 Ariz. 1711 [829 P.2d 1217] held that a statute requiring registration of sex offenders did not violate the ban on ex post facto legislation as applied to a defendant whose crimes preceded its enactment because the overriding purpose of the statute was "facilitating the location of child sex offenders by law enforcement personnel," a purpose unrelated to punishment. (*Id.*, 829 P.2d at p. 1224.)

 The case law defining punishment for ex post facto purposes thus focuses, as might be expected, on the two policies behind the ban on such legislation: notice to individuals of punitive effects and accountability of government for punitive purposes.[1] Therefore we use the language of the cases to define punishment consistently with these two policies.

We first examine whether the statute's effect is to punish defendant for past offenses. Section 1202.1 requires defendant to give a blood sample for testing and requires disclosure of the test result to defendant and to the Department of Justice, which will release the result only to the defense attorney on request or to the prosecuting attorney for the sole purpose of sentence enhancement for a subsequent criminal offense. The statute's impact on defendant is thus twofold: the drawing of blood for the test and the disclosure of the result.

Defendant asserts that drawing blood is a search; that for the state to perform such a search burdens his Fourth Amendment rights; and therefore that he is disadvantaged in violation of the ex post facto clause. We reiterate that the proper inquiry is not whether the test is a burden on defendant, but whether it makes more burdensome the punishment for his crime. In this

---

[1]Defendant errs in stating that modern ex post facto jurisprudence does not inquire into legislative purpose. On the contrary, the government's motivation is central to the question whether the legislation is "vindictive" or "arbitrary" and hence must be banned. Defendant mistakenly cites *People* v. *Zito* (1992) 8 Cal.App.4th 736 [10 Cal.Rptr.2d 491] for the proposition that purpose is immaterial and effect is exclusively dispositive in determining whether a statute is punitive. In *Zito* the punitive effect of a restitution fine was so severe that the fine was characterized as punishment regardless of its nonpunitive purpose. (*Id.* at p. 741.) *Zito* thus stands for the proposition that purpose is not the sole factor to be considered, rather than the proposition that purpose is immaterial. Both purpose and effect must be examined.

regard, we must determine whether a blood test for AIDS is punishment per se. We conclude it is not.

It is well settled that the physically intrusive effects of drawing blood for a test are slight. "The blood test procedure has become routine in our everyday life." (*Breithaupt* v. *Abram* (1957) 352 U.S. 432, 436 [1 L.Ed.2d 448, 451, 77 S.Ct. 408].) Moreover, "the intrusion occasioned by a blood test is not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.' " (*Skinner* v. *Railway Labor Exec. Assn.* (1989) 489 U.S. 602, 625 [103 L.Ed.2d 639, 665, 109 S.Ct. 1402], quoting *Schmerber* v. *California* (1966) 384 U.S 757, 771 [16 L.Ed.2d 908, 920, 86 S.Ct. 1826]; see also *Love* v. *Superior Court* (1990) 226 Cal.App.3d 736, 744 [276 Cal.Rptr. 660]; *Johnetta J.* v. *Municipal Court* (1990) 218 Cal.App.3d 1255, 1277 [267 Cal.Rptr. 666].) Whatever slight discomfort or inconvenience defendant might experience from the drawing of blood does not rise to the level of punishment.

The strictly limited disclosure provisions of the statute likewise do not have the effect of punishment. Defendant's fears of social ostracism if he tests positive for the AIDS virus and the result of his test becomes known are unwarranted. Until such time as he becomes a repeat offender, the test result will be disclosed to no one other than defendant and his attorney. It will be recorded at the state's Department of Justice but only for use by the prosecutor in connection with a future criminal offense.

We conclude that neither the drawing of blood for the test nor the disclosure of the test result to defendant and to law enforcement officials produces an effect on defendant that constitutes punishment for ex post facto purposes.

We next examine the purpose of the statute. Defendant argues that the statute's location in the Penal Code among provisions specifying penalties reveals a punitive intent. We read section 1202.1 and neighboring sections, however, to deal not only with the punitive consequences of a criminal conviction, but with the administrative consequences as well. The AIDS test is such a consequence.

Respondent asserts that section 1202.1 has a nonpunitive purpose—preventing the spread of AIDS—that is objectively legitimate. Although the mere assertion of a nonpunitive purpose does not end the inquiry, in the present case the proffered purpose is entirely consistent with the statute.

That AIDS poses a major threat to the public health and safety is beyond debate. (See *Johnetta J.* v. *Municipal Court, supra*, 218 Cal.App.3d 1255, 1261.) In 1986, the Legislature declared that "The rapidly spreading AIDS epidemic poses an unprecedented major public health crisis in California" (Health & Saf. Code, § 199.45, subd. (a)), and identified sexual contact as a primary means of transmitting the AIDS virus (Health & Saf. Code, § 199.46, subd. (h)). Requiring sex offenders to be tested, informing them of the results, and increasing their punishment for *future* sex crimes that could transmit AIDS are consistent with the goal of preventing the spread of the disease.

The statute's testing and disclosure provisions thus have a legitimate purpose other than punishment. Further, the method chosen—a mandatory AIDS test with results given only to the defendant and to law enforcement officials—is not excessive in relation to the statute's asserted purpose. It merely puts the defendant on notice and allows the state to enhance his sentence *if* he commits a *subsequent* crime.

Nor do the testing and disclosure provisions of section 1202.1 promote a traditional aim of punishment—retribution. The de minimis discomfort defendant will suffer when his blood is extracted can hardly be said to satisfy a thirst for revenge. Neither are the results of the test made public knowledge, forcing defendant to "display a scarlet letter to the world." (*State* v. *Noble, supra*, 829 P.2d 1217, 1224.) Further, the provision in question—a test for disease—has not historically been used to punish, unlike, for example, increased jail time or fines.

Our conclusion that the testing and disclosure provisions of section 1202.1 have no punitive purpose is consistent with other cases holding that challenged legislation is not punishment within the meaning of the ex post facto clause. Like DNA analysis of blood samples (*Jones* v. *Murray, supra*, 962 F.2d 302), deportation (*United States* v. *Bodre, supra*, 948 F.2d 28), hospitalization of the potentially insane (*Payne* v. *Fairfield Hills Hospital, supra*, 578 A.2d 1025), and registration as a sex offender (*State* v. *Noble, supra*, 829 P.2d 1217), AIDS testing has a legitimate nonpunitive governmental purpose. In the absence of any additional punitive purpose or significant punitive effect, this nonpunitive purpose removes the statute from the ambit of the ex post facto clause.

This conclusion is in harmony with the two purposes of the ban on ex post facto legislation. Because the test itself is not punishment for past crimes, no notice of its administration is required for ex post facto purposes; as for the possibility of an enhanced sentence for future crimes based on a positive test

result, defendant has received the requisite notice. And because the statute's purpose is not to punish for past crimes, defendant is not in need of protection from governmental vindictiveness.

For these reasons, we hold that a mandatory blood test for AIDS is not "punishment" within the meaning of the ex post facto clauses of the federal and state Constitutions and the cases construing them.

The judgment of the Court of Appeal is reversed with directions to affirm the judgment of the trial court in its entirety.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

Appellant's petition for a rehearing was denied January 28, 1993.