(No. 75806.—▮▮▮▮▮

JOHN DOE, Appellee, v. TERRENCE GAINER, Director of State Police, *et al.*, Appellants.

*Opinion filed September 22, 1994.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Mark E. Wilson, Assistant Attorney General, of Chicago, of counsel), for appellants.

Harold J. Krent, of Chicago, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

This appeal presents the issue of the constitutionality of sections 5—4—3(a)(3) and (c) of the Unified Code of Corrections (Code) (730 ILCS 5/5—4—3(a)(3), (c) (West 1992)). Section 5—4—3 requires persons convicted of sexual offenses to submit a specimen of blood for genetic marker indexing. Sections 5—4—3(a)(3) and (c) require prisoners convicted of sexual offenses before the enactment of section 5—4—3 to provide the required speci-

mens of blood prior to their release from prison. Plaintiff filed suit *pro se* seeking a ruling that the sections were unconstitutional and the circuit court of Johnson County so held. We reverse.

### Facts

Plaintiff is an inmate at the Shawnee Correctional Center serving an indeterminate sentence of 20 to 60 years for convictions in 1973 of rape and deviate sexual assault. Plaintiff is eligible for parole and has received annual parole hearings. In November 1992, the medical staff at the correctional center attempted to obtain a specimen of blood from plaintiff pursuant to section 5—4—3 of the Code. Plaintiff refused to provide the required specimen and thereafter filed suit *pro se* on December 30, 1992, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and section 2—701 of the Civil Practice Law (42 U.S.C. § 1983 (1988); 735 ILCS 5/2—701 (West 1992)). Defendants are the Director of the Illinois State Police and the Director of the Illinois Department of Corrections.

Plaintiff asked the circuit court to declare section 5—4—3(c) unconstitutional as applied to him and to enjoin defendants from enforcing the blood requirement against him. Specifically, plaintiff argued that section 5—4—3(a)(3) of the Code applied the blood specimen requirement of section 5—4—3 retroactively to him. Plaintiff also argued that section 5—4—3(c) prohibited his release on parole until he surrendered a specimen of blood. Plaintiff concluded that sections 5—4—3(a)(3) and (c) acted together to violate: (1) the prohibition of *ex post facto* laws by constricting his ability to earn parole or release, thereby making more onerous the punishment for his crimes committed before the sections' enactment; and (2) principles of due process by threatening his liberty interests in discretionary and mandatory parole.

The trial court agreed with plaintiff and ordered:

"That the retroactivity provision of (former) Ill. Rev. Stat., Ch. 38, Par. 1005—4—3(a)(3)(c) [*sic*] (now) 730 ILCS 5/5—4—3(a)(3)(c) [*sic*] be and is declared void as being violative of the *ex post facto* and due process clauses of the Constitutions of the United States and Illinois as applied to the plaintiff for the reasons set forth in plaintiff's complaint[.]"

The trial court further enjoined defendants and their agents from denying plaintiff's final discharge, parole, or release pursuant to sections 5—4—3(a)(3) and (c) due to plaintiff's refusal to provide a blood specimen, and ordered any references to plaintiff's refusal to submit a specimen of blood expunged from his prison master record file. The court also denied the Prisoner Review Board (Board) access to the information.

The State appealed the trial court's decision directly to this court pursuant to Supreme Court Rule 302(a), which provides for direct review where a trial court has declared a statute of Illinois or the United States invalid. (134 Ill. 2d R. 302(a).) We note that the trial court's order found sections 5—4—3(a)(3) and (c) void as applied to plaintiff. However, because the pertinent provisions in sections 5—4—3(a)(3) and (c) apply only to prisoners such as plaintiff who were convicted of a sexual offense prior to the enactment of section 5—4—3, we find the court *de facto* found those provisions invalid on their face.

Section 5—4—3: Genetic Marker Indexing

Section 5—4—3 of the Code establishes a databank consisting of the genetic identity of persons convicted of sexual offenses or institutionalized as sexually dangerous persons. This information is to be maintained by the Illinois Department of State Police and is to be used only by law enforcement officials.

Sections 5—4—3(a)(3) and (c)

Section 5—4—3(a)(3) requires a blood specimen to be provided by any person:

"convicted of a sexual offense *** before the effective date of this amendatory Act of 1989 *** [who] is presently confined as a result of such conviction." (730 ILCS 5/5—4—3(a)(3) (West 1992).)

Section 5—4—3(c) provides:

"Any person required by paragraph[ ] (a)(3) *** to provide specimens of blood shall be required to provide such samples prior to final discharge, parole, or release ***." 730 ILCS 5/5—4—3(c) (West 1992).

Before addressing the validity of these sections, we note that where the validity of a statute is at issue, the presumption exists that the statute is constitutional. (*Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504, 511-12.) Moreover, the party challenging the statute has the burden of proving the statute unconstitutional (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227) and any doubt as to the constitutionality of a statute will be resolved in favor of its validity (see *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 389). With these principles in mind, we now turn to section 5—4—3(c), the interpretation of which forms the basis of plaintiff's complaint.

Plaintiff argued in the circuit court that section 5—4—3(c) is an *enforcement mechanism* that operates to prohibit plaintiff's release on parole until he provides a specimen of his blood. Under this interpretation, plaintiff could be held indefinitely beyond any parole release date until he provides the required specimen. The trial court agreed with plaintiff. On appeal the State argues that section 5—4—3(c) is a *timing provision* rather than an enforcement mechanism. Under this interpretation, section 5—4—3(c) operates only to specify the time when a prisoner must submit a specimen of his blood—while in prison, and not after his release. Plaintiff, however, maintains on appeal that section 5—4—3(c) is an enforcement mechanism.

We find, as the State argues, that section 5—4—3(c) is a *timing provision* rather than an *enforcement mechanism*. Section 5—4—3(c) does not provide, as plaintiff argues, that a prisoner will remain in prison, even if paroled, until he provides a specimen of blood. Instead, section 5—4—3(c) provides only that plaintiff must provide a specimen of his blood at a certain time: "prior to his release."

With this interpretation of section 5—4—3(c), we now turn to the trial court's finding and plaintiff's arguments concerning the constitutionality of sections 5—4—3(a)(3) and (c). Plaintiff's argument is that sections 5—4—3(a)(3) and (c) are unconstitutional because section 5—4—3(c) operates to prohibit his release from prison on parole even though he may be legally entitled to parole. Plaintiff listed three scenarios in his complaint where this might occur: (1) the Board might interpret the section as barring the grant of parole until plaintiff provides a specimen of his blood, thus in effect adding a statutory factor to section 3—3—5(c) of the Code (730 ILCS 5/3—3—5(c) (West 1992) (statutory factors, which if present, prevent the Board from paroling eligible prisoner)) which did not exist when he was sentenced; (2) plaintiff might not be released from custody until he provides a specimen of blood, even though the Board may have granted discretionary parole pursuant to section 3—3—5(c) of the Code; and (3) plaintiff might be held in prison during his mandatory parole term (730 ILCS 5/3—3—5(e) (West 1992)) until he provides the required specimen of blood.

Plaintiff's argument, however, rests upon his interpretation of section 5—4—3(c) as an enforcement mechanism, rather than a timing provision. We do not accept plaintiff's interpretation of section 5—4—3(c), and we find his argument without merit. As such, we find no constitutional infirmities in sections 5—4—3(a)(3) and (c).

A similar result was reached in *Jones v. Murray* (4th Cir. 1992), 962 F.2d 302. There, the Federal court reviewed the constitutionality of a Virginia genetic marker statute, which provided:

"After July 1, 1990, the blood sample shall be taken [from incarcerated felons] prior to release from custody.

Notwithstanding the provisions of § 53.1—159 [the mandatory release on parole requirement], any person convicted of a felony who is in custody after July 1, 1990, shall provide a blood sample prior to his release." (4A Va. Code Ann. § 19.2—310.2 (Michie 1990).)

Plaintiff in *Murray* argued that the genetic marker statute was an *ex post facto* law.

The court noted that the statute specifically made reference to Virginia's mandatory parole provision and suggested that a prisoner could be held in prison during the mandatory parole period unless he provided the sample of blood. The court concluded that if that portion of the statute were to be enforced, "the prisoner would be held beyond the time of release contemplated by the original sentence and a term of his sentence, thereby, would be made more onerous *ex post facto*." (*Murray*, 962 F.2d at 310.) The court concluded, however, that the statute would be constitutional if the reference to mandatory parole were stricken from the statute. Once the reference to Virginia's mandatory parole was stricken, the statute read:

"[A]ny person convicted of a felony who is in custody after July 1, 1990, shall provide a blood sample prior to his release." (4A Va. Code Ann. § 19.2—310.2 (Michie 1990).)

This language is substantially the same as Illinois' section 5—4—3(c). We further note that the same result was recently reached concerning Illinois' section 5—4—3(c) by a Federal district court in an unpublished memorandum opinion and order. See *Gilbert v. Peters* (N.D. Ill. 1994), Nos. 93—C—20012, 92—C—20354.

We conclude by noting that plaintiff has not argued that section 5—4—3(c) is unconstitutional for requiring

him to provide a specimen of blood for genetic marking. Such arguments have failed in other jurisdictions for various reasons. (See *Murray*, 962 F.2d 302; *People v. McVickers* (1992), 4 Cal. 4th 81, 840 P.2d 955, 13 Cal. Rptr. 2d 850; *State v. Olivas* (1993), 122 Wash. 2d 73, 856 P.2d 1076.) Plaintiff's arguments are based solely on the consequences of his refusal to provide the specimen of blood. However, plaintiff acknowledged in the trial court that defendants may forcibly seize a specimen of his blood without violating any fourth amendment search and seizure concerns. Thus, as plaintiff acknowledges, nothing would prevent the blood sample from being taken prior to his release from prison. As the *Murray* court concluded, because a prisoner has no right to refuse to provide a sample of blood, the "blood testing requirement can legally be implemented." *Murray*, 962 F.2d at 309.

### Section 5—4—3(i)

Both parties have attempted to raise on appeal the constitutionality of section 5—4—3(i) of the Code, which provides for a finding of contempt of court against any prisoner ordered by the court to provide a blood sample who refuses to cooperate. (730 ILCS 5/5—4—3(i) (West 1992).) However, we need not decide that issue here. While the State has argued that section 5—4—3(i) is the valid enforcement mechanism of section 5—4—3, and defendant has responded, the trial court never ruled on that section. The trial court's order was limited to sections 5—4—3(a)(3) and (c). Moreover, the State appealed only the constitutionality of sections 5—4—3(a)(3) and (c) in its notice of appeal, and not the constitutionality of section 5—4—3(i). The validity of section 5—4—3(i) is not before this court.

### Conclusion

For the foregoing reasons, sections 5—4—3(a)(3) and

(c) are declared to be constitutional. Accordingly, the judgment of the circuit court is reversed.

*Reversed.*