**John GILBERT and Leroy Pughsley, Plaintiffs–Appellants,**

v.

**Howard A. PETERS III, Odie Washington, John Zeund, et al., Defendants–Appellees.**

Nos. 94–2847, 94–2848.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1995.

Decided May 8, 1995.

John H. Vogt (argued), Beckmire, Garrity & Vogt, Freeport, IL, for plaintiffs-appellants.

Jan E. Hughes, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Civ. Appeals Div. and David S. Rodriguez, Office of the Atty. Gen., Chicago, IL, for defendants-appellees.

Before CUMMINGS and KANNE, Circuit Judges, and WALTER, District Judge.*

CUMMINGS, Circuit Judge.

Plaintiffs, two individuals serving time for sexual offenses in the Illinois prison system, filed 42 U.S.C. § 1983 challenges to Section 5–4–3 of the Illinois Unified Code of Corrections. This statute, which took effect in July 1990, requires all persons incarcerated for sexual offenses to submit blood specimens to the Illinois Department of State Police prior to final discharge, parole, or release. 730 ILCS 5/5–4–3(c). Plaintiffs complain that the statute violated a number of their constitutional rights; on appeal we consider only one claim, that the statute violates the *Ex Post Facto* Clause.

## BACKGROUND

The Illinois statute at issue provides in relevant part that any person "convicted of a sexual offense * * * before the effective date of this * * * Act * * * [who] is presently confined as a result of such conviction" must provide a blood specimen to the Illinois Department of State Police. 730 ILCS 5/5–4–3(a)(3). The statute subsequently prescribes that individuals covered by subsection (a)(3) are "required to provide such samples prior to final discharge, parole, or release * * *." 730 ILCS 5/5–4–3(c). Blood samples are to be sent to the state police for analysis and categorization into genetic marker groupings, which will then be made available to law enforcement officers. 730 ILCS 5/5–4–3(d), (f).

Pursuant to this statute, officials at the Dixon Correctional Center required plaintiffs Gilbert and Pughsley to provide blood samples. Gilbert, who was convicted of rape and sexual assault in 1981, acquiesced after being threatened with loss of his good time credits and other disciplinary sanctions if he refused to comply.[1] Pughsley, who was also incarcerated in 1981 for attempted rape, refused to provide a blood sample upon request. Both men separately filed suit, charging state and federal law violations of privacy, search and seizure, and equal protection. The district court consolidated the two cases and dismissed them with prejudice. Mem. Op. June 28, 1994, reprinted in Pl.Br.App. In bringing this appeal, plaintiffs challenge only the district court's determination that the statute does not violate the *Ex Post Facto* Clause of the United States Constitution, Art. I, § 10, which prohibits states from "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30.

## ANALYSIS

■ As *Collins* and subsequent cases make clear, the *Ex Post Facto* Clause does not prohibit every alteration in a prisoner's confinement that may work to his disadvantage. See *Ewell v. Murray,* 11 F.3d 482, 485 (4th Cir.1993) ("[r]easonable prison regulations are not frozen at the time of each inmate's conduct, but rather, they may be subject to reasonable amendments"), certiorari denied, —— U.S. ——, 114 S.Ct. 2112, 128 L.Ed.2d 671. Only measures which are both retroactive and punitive fall within the purview of the clause. *Collins,* 497 U.S. at 51, 110 S.Ct. at 2723–24.

■ Initially, we examine whether the DNA statute may fairly be considered punitive. Although "criteria for determining whether or not legislation is punitive have yet to be fully developed," *People v. McVickers,* 4 Cal.4th 81, 13 Cal.Rptr.2d 850, 852, 840 P.2d 955, 957 (1992), one significant factor for consideration is the legislation's purpose. *Trop v. Dulles,* 356 U.S. 86, 96, 78 S.Ct. 590, 595–96, 2 L.Ed.2d 630, quoted in *McVickers,* 13 Cal.Rptr.2d at 853, 840 P.2d at 958. Both

---

* The Honorable Donald E. Walter of the Western District of Louisiana is sitting by designation.

1. Gilbert also contends that he unsuccessfully attempted to withdraw his blood sample.

federal and state courts have uniformly concluded that statutes which authorize collection of blood specimens to assist in law enforcement are not penal in nature. Rather, "the blood sample is taken and analyzed for the sole purpose of establishing a data bank which will aid future law enforcement." *Jones v. Murray*, 962 F.2d 302, 309 (4th Cir.1992) (interpreting similar statute), certiorari denied, —— U.S. ——, 113 S.Ct. 472, 121 L.Ed.2d 378; see also *Kruger v. Erickson*, 875 F.Supp. 583, 589 (D.Minn.1995) (interpreting a similar statute as "not penal in nature. Its purpose is to create a DNA database for law enforcement purposes"); *McVickers*, 13 Cal.Rptr.2d at 854, 840 P.2d at 959 (blood collection statute has legitimate, non-penal legislative purpose). The blood specimen statute thus does not run afoul of the *Ex Post Facto* Clause.

■ Plaintiffs contend that regardless of whether blood sample collection is itself an acceptable retroactive practice, the Illinois statute is unconstitutional because it creates the danger that inmates will be punished for refusing to comply. Section 5/5–4–3(i) authorizes court orders for non-compliant individuals and provides that violators will be held in contempt of court; both plaintiffs' experiences, moreover, indicate that those who refuse to submit to blood testing also face internal administrative sanctions, such as loss of "good time." The district court, acknowledging this possibility, noted that any sanctions would result from an inmate's refusal to comply with valid prison regulations rather than from the commission of the crime for which he was sentenced. Mem.Op. at 21, reprinted in Pl.Br.App. As the Fourth Circuit stated in *Jones*:

> [A]s in the case regarding any prison regulation, violators can be administratively punished for their failure to provide samples. The *Ex Post Facto* clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with good prison administration.... [C]hanges in conditions of confinement ... and denials of privileges—matters which every prisoner can anticipate are contemplated by his original

admission to prison—are necessarily functions of prison management.

*Jones*, 962 F.2d at 309 (internal quotation omitted). Disciplinary measures imposed on inmates for failing to obey orders also do not violate the *Ex Post Facto* Clause. *Kruger*, 875 F.Supp. at 589 n. 7.

Finally, plaintiffs suggest that under the terms of the statute, which provides that blood samples are to be collected "prior to final discharge, parole, or release," they are subject to being held in prison past their release date. The Illinois Supreme Court's recent decision in *Doe v. Gainer*, 162 Ill.2d 15, 204 Ill.Dec. 652, 642 N.E.2d 114 (1994), certiorari denied, —— U.S. ——, 115 S.Ct. 1139, 130 L.Ed.2d 1099, interpreting this language as a timing mechanism rather than an enforcement provision (in other words, requiring an inmate to submit a blood specimen while still in prison rather than after his release), is binding on this Court and forecloses plaintiffs' argument. The district court's dismissal of plaintiffs' complaints is affirmed.