OPINION OF THE COURT
Daniel Palmieri, J.
New York State recently enacted an amendment to its Criminal Procedure Law granting victims of certain sex crimes the *31 right to require the convicted defendant to submit to HIV related testing (CPL 390.15) and the complainant in this case has applied for an order directing that the defendant submit to human immunodeficiency (HIV) related testing. (CPL 390.15 [1] [a].)
The defendant was indicted for rape and sodomy in the first degree, "by forcible compulsion”, in violation of Penal Law § 130.35 (1) and § 130.50 (1) and sexual abuse in the first degree (Penal Law § 130.65 [1]). Defendant testified at the Grand Jury inquiry and admitted that he and the complainant engaged in unprotected sexual intercourse and other sexual conduct but that it was consensual. Pursuant to a plea agreement, the defendant was permitted to enter a plea of guilty to attempted sexual abuse in the first degree (Penal Law §§ 110.00, 130.65 [1]), a class E felony, as a reduction of the sexual abuse count and the first two counts alleging forcible sexual and deviate intercourse were dismissed by the People as unprovable. (CPL 210.20 [1] [h].) The defendant thus stands convicted of a felony offense enumerated in Penal Law article 130, in which an act of sexual intercourse is part of the underlying conduct, but for which "sexual intercourse” is not an essential element in its commission. The issue to be resolved is whether this factual scenario is encompassed by the mandate set forth in CPL 390.15 (1) (a).
CPL 390.15 (1) (a) provides in pertinent part: "In any case where the defendant is convicted of a felony offense enumerated in any section of article one hundred thirty of the penal law, or any subdivision of section 130.20 of such law, where an act of "sexual intercourse” or "deviate sexual intercourse,” as those terms are defined in section 130.00 of the penal law, is required as an essential element for the commission thereof, the court must, upon a request of the victim, order that the defendant submit to human immunodeficiency (HIV) related testing.”
The meaning and intendment of the statute is not clear from a simple reading of its provisions. Does the statutory requirement for HIV related testing of a defendant apply to convictions for any felony offense defined in Penal Law article 130, and for the misdemeanor of sexual misconduct as defined in subdivisions (1) and (2) of Penal Law § 130.20, which respectively require "sexual intercourse” and "deviate sexual intercourse” as essential elements (compare, Penal Law § 130.20 [3]) or does the testing apply only to convictions for offenses defined in Penal Law article 130 which have "séxual intercourse” or *32 "deviate sexual intercourse” as essential elements? Two important and competing public policy considerations are impacted by adoption of either an expansive or limited reading of the statute. First, the strictly limited legislated authority to compel performance of sensitive, highly confidential HIV related testing and disclosure (Public Health Law §§ 2781, 2782; Matter of Doe v Connell, 179 AD2d 196 [4th Dept 1992]); and second, the burgeoning legislative concern for the rights, remedies, and peace of mind of crime victims. (See, e.g., Assembly Mem in Support, 1995 McKinney’s Session Laws of NY, at 1872.)
Inasmuch as the statute is not clear on its face, resort to other means of interpretation is appropriate. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; see generally, Sega v State of New York, 60 NY2d 183, 191 [1983], rearg denied sub nom. Cutway v State of New York, 61 NY2d 670; People v Graham, 55 NY2d 144, 151 [1982]; People v Cypress Hills Cemetery, 208 AD2d 247, 251 [2d Dept 1995]; Marsala v Weinraub, 208 AD2d 689 [2d Dept 1994]; Matter of Daniel C., 99 AD2d 35, 41 [2d Dept 1984], affd 63 NY2d 927.) The primary purpose in doing so is to ascertain the intention of the Legislature in enacting the statute. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92; see generally, People v Hill, 85 NY2d 256, 262 [1995]; People v Finnegan, 85 NY2d 53, 58 [1995]; People v Smith, 79 NY2d 309, 311 [1992]; Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38 [1966]; Matter of Brusco v Braun, 199 AD2d 27, 32 [1st Dept 1993], affd 84 NY2d 674 [1994].) To that end, courts are advised to apply the established "system of legal hermeneutics,” fixed principles of interpretation of legislative enactments designed to "ascertain the meaning and intent of the law-giver.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 91, at 173-174; see generally, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94-98; see also, Matter of 1605 Book Ctr. v Tax Appeals Tribunal, 83 NY2d 240, 244 [1994]; Matter of Thomas v Bethlehem Steel Corp., 95 AD2d 118, 120 [3d Dept 1983], affd 63 NY2d 150 [1984].)
One of the fundamental considerations in statutory interpretation is "the general spirit and purpose underlying [a statute’s] enactment;” the construction which furthers "the object, spirit ánd purpose of the statute” is the one to be preferred. (McKinney’s Cons Laws of NY, Book 1, Statutes § 96, at 202-205.) As an aid in finding this legislative purpose, extrinsic matters may properly be considered by the court. (See generally, McKinney’s Cons Laws of NY, Book 1, Statutes *33 §§ 120-129.) Thus, "statements of the draftsman of the statute” may properly be considered in determining legislative intent. (McKinney’s Cons Law of NY, Book 1, Statutes § 120, at 242; cf., McKinney’s Cons Laws of NY, Book 1, Statutes §§ 122, 124, 125.) Here, there is a very brief legislative "Memorandum in Support” of the bill, apparently as initially introduced in the New York State Assembly (1995 McKinney’s Session Laws of NY, at 1872), which indicates two underlying "justifications” for enacting the proposed legislation: (1) it is necessary in order to obtain certain Federal antidrug funding; and (2) it will lessen the trauma for those victims of certain sex crimes who wish to have such HIV related information.
Furthermore, the memorandum summarizes certain of the proposed legislation’s provisions, in the following language: "The order must be granted if the defendant has been convicted of a felony or misdemeanor crime involving sexual intercourse under Article 130 of the Penal Law within six months prior to the application.” (Id.)
The statute enacted into law contains no such six-month proviso. Moreover, the language ostensibly describing the scope of the proposed legislation’s testing provisions merely parrots the Federally mandated minimum required for a State’s statute in order to qualify that State to share in the aforementioned Federal grant. (See, 42 USC § 3756 [f] [2], [3]; 18 USC § 2246 [2] [A], [B].) The statute enacted into law and being considered here does not contain the plain, straightforward wording suggested by the legislative memorandum. (See, e.g., People v Graham, 55 NY2d, supra, at 151 [" 'there is no necessary correlation between what the draftsman of the text of a bill understands it to mean and what members of the enacting legislature understand’ ”].) To the contrary, the complex structure and punctuation of the enactment suggests that the Legislature intended something broader in scope than the mandated minimum. (See, Preiser, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 390.15, 1996 Pocket Part, at 16.) Thus, for the purposes of this decision, the legislative memorandum is of value as an indication of the Legislature’s intention, by this statute as a matter of public policy, to lessen the trauma of possible HIV infection suffered by the victim of a defendant’s sex crime. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 126.)
Throughout the canons of statutory construction, the mantra "legislative intent is paramount” is repeatedly chanted. In construing a statute, the rules of grammar and punctuation, *34 and even the literal meaning of words, must give way if necessary to give effect to the intent of the Legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes § 251, at 415.) However, prosaic though it may be, punctuation is a part of a statute as passed. The common marks of punctuation have been in use for centuries. Their ultimate function is to make the writer’s meaning clear. "Hence if such meaning is not clear the marks [of punctuation] may be considered, and they frequently form a valuable aid in determining the legislative intent.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 253, at 417.) Although, as a general rule., legislators are not presumed to be good grammarians, there is no converse presumption that legislators are totally ignorant of the rules taught in rudimentary high school English classes. (McKinney’s Cons Laws of NY, Book 1, Statutes § 251, at 415.)
Here, the placements of the several "commas” in CPL 390.15 (1) (a) as enacted could provide insight into the intended scope of the statute. However, "The comma * * * is probably one of the most misused and controversial marks of punctuation. Many of us were taught that commas should reflect the pauses we make in speaking, but this approach leads to text littered with disruptive and unnecessary commas. In fact, commas are most valuable when they reflect the sentence’s underlying grammatical structure, serving as sign posts to help the reader quickly grasp the writer’s meaning * * * Many comma 'rules’ are open to debate, however, and editors disagree among themselves more about commas than about any other aspect of punctuation. The trend for many years has been toward 'open’ punctuation, which means using as few commas as possible.” (Sutcliffe, New York Public Library Writer’s Guide to Style and Usage, at 242-243 [Harper Collins 1994].)
The application of two long-recognized "rules” of proper comma usage to the structure of the first sentence of CPL 390.15 (1) (a) helps to clarify the legislative intent.
First, "[t]he use of a comma before the disjunctive 'or’, in construing a sentence in a statute, ordinarily indicates an intention to discriminate the first half of [the] sentence from the second half.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 253, at 418, citing Matter of Schwimmer, 49 NYS2d 481, 485 [Sur Ct, NY County 1944]; cf., Sutcliffe, op. cit, at 243-245; Sabin, The Gregg Reference Manual ¶¶ 125-126 [7th ed 1992]; Whitten-Horner-Webb, Hodges’ Harbrace College Handbook §§ 12a, 12c, 13b, 13e [11th ed 1990].) Thus, the placing of a comma before "or any subdivision of section 130.20 of *35 such law” indicates an intention by the Legislature to distinguish its description of the misdemeanor convictions to which it intended the statute to apply from its prior description of those felony convictions within the statute’s ambit, to wit: "a felony offense enumerated in any section of article one hundred thirty of the penal law”. The subsequent use of commas to punctuate the clause "where an act of 'sexual intercourse’ or 'deviate sexual intercourse’ * * * is required as an essential element for the commission thereof” merely sets apart this interrupting descriptive dependent (subordinate) clause from the immediately preceding phrase it is intended to modify, viz., "any subdivision of section 130.20”. (See generally, Sutcliffe, op. cit., at 251-253; Sabin, op. cit., 131-132; Whitten-Horner-Webb, op. cit., §§ 12d, 24a; see also, Russin Beer v Phoenix Beverages, 200 AD2d 659, 661 [2d Dept 1994]; Matter of Buffalo Columbus Hosp. v Axelrod, 165 AD2d 605, 608 [4th Dept 1991].) In his Practice Commentary to CPL 390.15, Professor Peter Preiser states: "The testing must be ordered by the court upon application of the victim when a defendant is convicted of any felony defined in Penal Law Article 130 or any misdemeanor defined in Penal Law § 130.20 (1) or (2).” (McKinney’s Cons Laws of NY, Book 11 A, CPL 390.15, 1996 Pocket Part, at 16.)
It is concluded that the Legislature intended the requirement of HIV related testing to apply to a defendant convicted of any of the felony offenses enumerated in Penal Law article 130, or convicted of the class A misdemeanor of sexual misconduct as defined by subdivision (1) or (2) of Penal Law § 130.20 and did not intend to restrict testing only to those felonies where intercourse is an essential element.
Adoption of this broader reading of the statute does not mean that testing should be ordered in every instance where the felony conviction is for a crime where intercourse is not an element. Rather this interpretation is employed so as not to unduly constrict the rights of the victim. The statutory definition of "victim”, set forth in CPL 390.15 (1) (b), supports such a construction of the statute’s testing requirements.
By the plain words of the statute, a court must order that defendant submit to HIV related testing "upon a request of the victim”. (CPL 390.15 [1] [a].) "Victim” is defined as "the person with whom the defendant engaged in an act of sexual intercourse or deviate sexual intercourse * * * where such conduct with such victim was the basis for the defendant’s conviction of an offense specified in paragraph (a) of’ CPL 390.15 (1). If a *36 defendant is convicted of a felony enumerated in Penal Law article 130 which does not have some form of sexual or deviant intercourse as an essential element, and there is nothing factually underlying the conviction in the record to establish the occurrence of some form of sexual intercourse, then no HIV related testing is mandated simply because the request for such testing will not have been made by a "victim”, as that term is defined in CPL 390.15 (1) (b) and which is required by CPL 390.15 (1) (a).
"It is a fundamental rule of statutory interpretation that of two constructions which might be placed upon an ambiguous statute one which would cause objectionable consequences is to be avoided.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 141, at 280-281.) The construction of a statute to be adopted is the one which will not cause an injustice or an absurdity. "The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation.” (Id., at 281; see generally, Matter of Jose R., 83 NY2d 388, 393 [1994]; Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 77 NY2d 114, 124-125 [1990]; People v Davis, 195 AD2d 1, 4-5 [1st Dept 1994], lv denied 83 NY2d 871 [1994].) If a limited reading of the statute is adopted here, HIV related testing of this defendant would not be ordered simply because through the process of plea bargaining this defendant stands convicted of a felony enumerated in Penal Law article 130 which does not have some form of sexual or deviant intercourse as an essential element. However, the facts underlying his conviction by guilty plea clearly show that sexual intercourse is the conduct which forms the basis for the defendant’s conviction and the crime victim here is subjected in full measure to the trauma the statute was ostensibly enacted to lessen. (Cf., McKinney’s Cons Laws of NY, Book 1, Statutes § 111; Matter of Town of New Castle v Kaufmann, 72 NY2d 684, 686 [1988]; Hudson City Sav. Inst. v Drazen, 153 AD2d 91, 93 [3d Dept 1990].)
HIV related testing of the defendant is mandated. The defendant has been convicted of a felony defined in Penal Law article 130, and the person making the request fits the statutory definition of "victim”. She is the person with whom the defendant concededly engaged in an act of unprotected sexual intercourse, and that conduct with her is the basis for this defendant’s conviction by guilty plea. This "victim” is clearly one of that class of persons the Legislature intended to help when it enacted this statute.
*37 In interpreting a statute, all parts of the statute are to be construed together, harmonized and given effect (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97-98; Heard v Cuomo, 80 NY2d 684, 689 [1993]; Home & City Sav. Bank v Ritter, 192 AD2d 1037, 1038 [3d Dept 1993]); without imputation to the Legislature that, through its statute, it is requiring "the doing of a senseless thing” (McKinney’s Cons Laws of NY, Book 1, Statutes § 361, at 521); and in such manner that any substantial interest of the defendant is strictly preserved while, at the same time, the statute’s remedial nature is given liberal recognition. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 321, 325; Enright v Eli Lilly & Co., 77 NY2d 377, 385, n 1 [1991]; People v Farini, 239 NY 411, 415 [1925]; People v Adler, 140 NY 331, 336 [1893]; Albright v Shapiro, 206 AD2d 268 [1st Dept 1994]; see also, In re Adamo, 619 F2d 216 [2d Cir 1980], cert denied sub nom. Williams v New York Higher Educ. Servs. Dept., 449 US 843.) The above construction harmonizes the realities of the plea bargaining process and the remedial purpose of the statute to lessen a particular trauma for victims of sex crimes. At the same time, this holding will not unreasonably infringe upon a highly protected substantive right of a defendant or require "the doing of a senseless thing”. Needless and unwarranted testing will therefore not occur while, at the same time, genuine "victims” will reap the remedial benefits of the statute, based upon what admittedly has happened. The remedial benefits of the statute for sex crime victims will rightly be dependent upon the conduct which actually occurred between the defendant and the victim, and not solely upon the particular elements of a felony sex offense for which an agreement has been reached through the plea bargaining process.
Constitutional challenges to similar laws have been largely unsuccessful. Except for New Jersey, which has ruled otherwise (see, State in Interest of J.G., N.S., & J. T., 283 NJ Super 32, 660 A2d 1274 [1995]), other jurisdictions have sustained, on constitutional grounds, legislation similar to ours. (See, Government of Virgin Islands v Roberts, 756 F Supp 898 [D VI 1991]; Fosman v State, 21 Fla L Weekly D55, 664 So 2d 1163 [Dist Ct App, 4th Dist 1995]; State v Parr, 182 Wis 2d 349, 513 NW2d 647 [1994]; People v Jillie, 8 Cal App 4th 960, 11 Cal Rptr 2d 107 [1992]; Johnetta J. v Municipal Ct., 218 Cal App 3d 1255, 267 Cal Rptr 666 [Cal App, 1st Dist 1990] [all of which give extensive analyses of applicable constitutional issues].)
In Matter of Juveniles A, B, C, D, E (121 Wash 2d 80, 847 P2d 455 [1993]) where some of the cases did not involve the *38 passing of body fluids and the statute was interpreted to authorize testing it was held "that the particular act for which an offender was prosecuted involved a minimal risk of exposure to HIV does not remove the State’s interest in testing” and that "it is often difficult to learn whether body fluids passed during the assault” (121 Wash 2d, at 95-96, 847 P2d, at 461-462, supra).
Moreover, the court found that where testing is authorized after conviction for a sex offense a defendant’s "expectation of privacy in bodily fluids is greatly diminished” by having engaged in a class of criminal behavior which presents the potential of exposing others to the AIDS virus. (121 Wash 2d, at 92-93, 847 P2d, at 460, supra.)
New York has approved blood testing for HIV even prior to the statute under review here where the purpose of the test was to gather evidence material to a charge of attempted murder (People v Rodriguez, 214 AD2d 347 [1st Dept 1995]) and where the purpose of the testing was, among other things, to allow a victim "to know whether she may have been exposed to the AIDS virus by reason of having been exposed to the body and sexual fluids of the defendant” (People v Durham, 146 Misc 2d 913, 916 [Sup Ct 1990]) and New York has long had a policy of permitting even preconviction blood testing for the purpose of gathering evidence. (Matter of Abe A., 56 NY2d 288 [1982].) Based on the foregoing there is no constitutional impediment to the testing.
The Legislature has specifically made the provisions of CPL 390.15 applicable to "persons convicted and adjudicated on and after [August 1, 1995].” (L 1995, ch 76, § 5.) In the instant case, the defendant entered his plea of guilty to the reduced felony charge after the effective date of the statute. By its terms, the Legislature intended the provisions of the statute to apply to this defendant (and to others similarly situated). That the conduct which underlies the defendant’s conviction (and therefore forms the basis for any HIV related testing to be ordered) occurred prior to the effective date of the statute does not alter the statute’s applicability herein. That particular factual circumstance does not implicate the Federal constitutional prohibition on ex post facto laws. (US Const, art I, § 10, cl [1].)
In Collins v Youngblood (497 US 37 [1990]), the United States Supreme Court refined its analysis of the ex post facto clause, essentially by returning it to parameters defined by ancient principles which reflect "the original understanding of Ex Post Facto Clause” (supra, at 43, citing Beazell v Ohio, 269 US 167, *39 169-170 [1925]; Caldor v Bull, 3 Dali 386, 390 [1798]). Briefly, the prohibition on ex post facto laws applies to only penal statutes. Moreover, the constitutional prohibition applies to only such statute if it " 'punishes as a crime an act previously committed which was innocent when done, makes more burdensome the punishment for a crime, after its commission, or deprives one charged with a crime of any defense available according to law at the time the act was committed’ ” (Collins v Youngblood, supra, at 42). The Court specifically overruled a line of prior cases which had held that a law violates the ex post facto clause if it eliminates a "substantial protection” or a "personal right” of a defendant in place at the time the offense was allegedly committed.
The statute in issue here is not penal in nature. It is decidedly not punitive, in either purpose or effect. As already discussed at length above, the statute is intended, not to punish, but to accomplish another legitimate governmental purpose — to ease the trauma of victim of a sex crime with respect to the HIV related disease. Moreover, the proper inquiry is not whether HIV related testing places a burden on the convicted criminal defendant, but rather whether it makes more burdensome the punishment for his crime. It cannot rationally be argued that a blood'test for AIDS is punishment per se. The intrusion is slight, and involves virtually no risk, trauma or pain. "Whatever slight discomfort or inconvenience defendant might experience from the drawing of blood does not rise to the level of punishment.” (People v McVickers, 4 Cal 4th 81, 88, 840 P2d 955, 959 [1992], reh denied Jan. 28, 1993, 1993 Cal LEXIS 583.) Likewise, the strictly limited disclosure provisions of the statute "do not have the effect of punishment.” (Supra, 4 Cal 4th 81, 88, 840 P2d, at 960; see, CPL 390.15 [3], [6], [8].) In a case strikingly similar to this one, the highest court in California observed: "The de minimis discomfort defendant will suffer when his blood is extracted [for mandatory testing] can hardly be said to satisfy a thirst for revenge. Neither are the results of the test made public knowledge, forcing defendant to 'display a scarlet letter to the world.’ * * * Further, the provision in question — a test for disease — has not historically been used to punish, unlike, for example, increased jail time or fines.” (4 Cal 4th, at 88, 840 P2d, at 960, supra [citation omitted].)
The testing provisions of CPL 390.15 clearly do not constitute an ex post facto enhancement of punishment. That the compelling of a highly sensitive and confidential HIV related *40 blood test might arguably be viewed as a retrospective infringement upon the convicted defendant’s "substantial protection” or "personal right” is, in view of the legitimate, nonpunitive purpose and effect of this remedial statute, irrelevant for purposes of ex post facto analysis. (Collins v Youngblood, supra.) The absence of any additional punitive purpose or significant punitive effect removes CPL 390.15 from the ambit of the ex post facto clause. (People v McVickers, supra, 4 Cal 4th, at 89, 840 P2d, at 960.)
Based upon the foregoing, pursuant to CPL 390.15 (1) (a), the defendant is directed to submit to HIV related testing in accordance with the order to be issued herewith.