James H. KINDRED, Petitioner–
Appellant,

v.

John R. VANNATTA, Superintendent,
Respondent–Appellee.

No. 00–3755.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 16, 2001.*

Decided Oct. 16, 2001.

Rehearing and Rehearing En Banc
Denied Dec. 13, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(a)(2).

Before BAUER, EASTERBROOK and EVANS, Circuit Judges.

## ORDER

State prisoner James H. Kindred contends in this action brought under 28 U.S.C. § 2254 that Indiana prison officials violated his due process rights under the Fourteenth Amendment when, after two state courts modified his consecutive prison sentences to run concurrently, they adjusted his credit-earning history without conducting a hearing. The district court denied his petition. We affirm.

■ Kindred racked up convictions in three Indiana counties of various criminal acts during the mid–1980s. Kindred was convicted in September 1984 on two counts of forgery and one count of perjury in Monroe County and sentenced to three consecutive terms of incarceration totaling 20 years. Four months later he was convicted on one count of forgery and one count of theft in Putnam County and sentenced (as a habitual offender) to two consecutive terms of incarceration totaling 42 years, to run consecutively to his Monroe County sentences. Shortly thereafter Kindred was convicted of conspiracy to commit escape in Morgan County and sentenced (again as a habitual offender) to 34 years' incarceration, to run consecutively to his Monroe County and Putnam County sentences. After this final conviction in Morgan County, Kindred faced 96 years' incarceration.

The Indiana Department of Corrections discharged Kindred from the first of his three Monroe County sentences in March 1988 and the second in April 1992. In July 1994 a prison disciplinary board found Kindred guilty of reproducing official papers without authorization and reduced his credit-earning class from Class I (one day's good-time credit for each day served) to Class II (one day's credit for each two days served). *See* Ind.Code § 35–50–6–3(a), (b).

On October 9, 1994, the Department discharged Kindred from his final Monroe County sentence, and Kindred began serving the first of his Putnam County sentences. Under the Department's administrative procedures, prisoners who finish serving a consecutive sentence and begin to serve another return to Class I. Accordingly, the Department restored Kindred's credit-earning class to Class I.

In September 1997 the Morgan Superior Court revised Kindred's sentence to run concurrently (rather than consecutively) to the Monroe County and Putnam County sentences. In December 1999 the Putnam Circuit Court likewise revised his sentences to run concurrently to the Monroe County sentences. Neither the parties nor the record reveal why this was done-Kindred states only that the consecutive sentences were "illegal." The amended sentences, however, were good news for Kindred, reducing his imprisonment time by 58 years. On March 15, 2000, a prison release coordinator advised Kindred that Kindred's revised earliest projected release date was February 15, 2003.

One week later, however, the Department recalculated Kindred's credit-earning-class history to place him in the same position that he would have been in had the courts originally sentenced him to concurrent terms. Had Kindred been sentenced originally to concurrent terms, he would not have been promoted to Class I on October 9, 1994, the turnover date of previously-consecutive sentences. Under Indiana law, inmates who commit disciplinary violations must be free of further violations for six months before they can be

eligible for a credit-class promotion. *See* Ind.Code § 35–50–6–4(d). Kindred committed additional disciplinary violations in November 1994, March 1995, and July 1995; thus, he was ineligible for promotion until January 1996, six months after his last violation. Accordingly, the Department concluded that Kindred's promotion to credit-class one should not have occurred on October 9, 1994, but on January 11, 1996. Given this adjustment, the Department pushed back Kindred's projected release date almost one year, to January 3, 2004.

After the Department's Commissioner rejected his appeal, Kindred sought relief under § 2254, arguing that the Department violated his due process rights by failing to conduct a hearing before adjusting his credit-earning-class history, and that the Department's credit-class review violated the Ex Post Facto Clause of the United States Constitution, art. I, § 10 cl. 1. The district court denied his petition, concluding that the Department's credit review was merely an administrative adjustment, not "punishment" or "discipline" that triggers due process protections. The court did not address Kindred's ex post facto argument.

On appeal Kindred argues that the Department should have given him notice and a hearing prior to extending his potential release date. Prisoners are not entitled to procedural due process safeguards unless they can establish the deprivation of a constitutionally protected interest in life, liberty or property. *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir.1995) (per curiam). Kindred argues that the Department deprived him of liberty by stripping him of good-time credits that he earned after the turn-over of his consecutive sentences.

Although prisoners have a liberty interest in good-time credits, *see* Ind.Code § 35–50–6–5; *Montgomery v. Anderson,* 262 F.3d 641, 644 (7th Cir.2001), Kindred did not "lose" good-time credit and thus did not suffer a constitutional deprivation. Kindred's elevation to Class I occurred under his original sentences, but the Putnam and Morgan courts revised those sentences—to Kindred's benefit. The Department did not strip him of good time; it instead reviewed his credit status and recalculated his earliest projected release date in accordance with the revised sentencing scheme. *See United States ex rel. Henderson v. Morris,* 670 F.2d 699, 701 (7th Cir.1982) (upholding modification of sentences from consecutive terms to concurrent terms, thereby reducing Illinois prisoner's minimum prison time by 40 years, even though modification changed his eligibility for parole). Kindred essentially seeks the benefits of both his original and amended sentences—a release date in accordance with the revised sentences coupled with good-time credit as measured under the original sentences. But once the Indiana courts altered the consecutive character of Kindred's original sentences, the prior sentences were no longer in effect, along with any credit-earning determinations made along the way. Thus, Kindred was not "deprived" of a liberty interest, and his procedural due process claim fails.

■ Kindred also argues that the Department's review of his credit-earning-class and subsequent revision in his projected release date violate ex post facto prohibitions. His argument is meritless. An ex post facto law retroactively changes the punishment for a crime to the detriment of a defendant. *United States v. Hemmings,* 258 F.3d 587, 594 (7th Cir. 2001). Only prison regulations that are both retroactive and punitive fall within the purview of the Ex Post Facto Clause. *Gilbert v. Peters,* 55 F.3d 237, 239 (7th Cir.1995). But in this case, no regulation or interpretation of any regulation has changed. Ex post facto concerns would be

triggered had the Department applied new law to pre-existing facts, but here we have just the opposite—pre-existing "law" was applied to new facts. Moreover, as we noted earlier, the Department did not punish Kindred—it merely adjusted his credit-earning history as if he had been sentenced to concurrent terms from the onset. Kindred's amended sentences greatly reduced the amount of time he was slated to be in jail, and the credit-class review merely corrected his earliest projected release date in a manner consistent with the amended sentences that Kindred had presumably sought. As a result the Department's credit-class review did not violate the Ex Post Facto Clause.

The judgment of the district court is AFFIRMED.