[No. A070532. First Dist., Div. Four. July 1, 1996.]

PRO-FAMILY ADVOCATES, Plaintiff and Respondent, v.
JAMES GOMEZ, as Director, etc., Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Peter J. Siggins, Assistant Attorney General, Bruce M. Slavin, Morris Lenk, Susan J. King and Karl S. Mayer, Deputy Attorneys General, for Defendant and Appellant.

Michael Satris, Margaret Littlefield, Greg Brown, Carrie Kojimoto, Steve Fama and Gina S. Berry for Plaintiff and Respondent.

**OPINION**

**REARDON, J.**—In this appeal by the Director of the California Department of Corrections,[1] we must determine whether the trial court erred by issuing a preliminary injunction barring enforcement of an administrative regulation

---

[1]Director James Gomez filed a timely notice of appeal from an order modifying a preliminary injunction. The order is appealable as an order granting an injunction. (See Code Civ. Proc., § 904.1, subd. (a)(6).)

excluding certain prisoners from participation in the overnight family visiting program. We hold that the regulation does not constitute an ex post facto law, nor does it violate equal protection.[2] Thus, the trial court erred and we reverse the preliminary injunction.

## I. FACTS

In April 1995, appellant James Gomez—acting in his capacity as Director of the State Department of Corrections—promulgated a regulation prohibiting family visits[3] for specified state prison inmates. The restrictions—which were to take effect on May 30, 1995—applied to inmates convicted of certain sex offenses; those convicted of violent offenses committed against a family member or a minor; those sentenced to life terms; long-term inmates temporarily classified to close custody; and inmates whose case factors indicate that their participation in the family visiting program would be incompatible with public safety.[4]

Respondent Pro-Family Advocates[5] was then in the midst of litigation challenging an earlier version of this regulation.[6] Its earlier-filed complaint had sought to enjoin enforcement of that regulation on equal protection and

---

[2]Pro-Family Advocates also argues that the trial court correctly issued the preliminary injunction because it was likely to prevail on its due process cause of action. However, the trial court did not rule on this claim—only on the ex post facto and equal protection causes of action. Thus, we will review only the two aspects of the case that are properly before us.

[3]A "family visit" is the correctional practice of allowing an inmate's immediate family members to visit with the inmate under relatively private and intimate circumstances for an extended period of time—usually overnight and sometimes for as long as three days. (See Cal. Code Regs., tit. 15, § 3174.)

[4]Section 3174, subdivision (e)(1), (2) of title 15 of the California Code of Regulations states: "(e) . . . [¶] (1) Family visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to the following Penal Code sections: 187 (when the victim is a family member or minor); 192 (when the victim is a family member or minor); 261; 261.5; 262; 264.1; 266c; 266j; 273a; 273d; 273.5; 273.6; 285; 286; 288; 288a; 288.2; 288.5; 289; 289.5; 311.1; 311.2; 311.3; 311.4; 313.1; 314; or 647.6. [¶] (2) Family visits shall not be permitted for inmates who are in any of the following categories: sentenced to life without the possibility of parole; sentenced to life, without a parole date established by the Board of Prison Terms; designated Close A or Close B custody; designated a condemned inmate; assigned to a reception center; assigned to an administrative segregation unit; assigned to a security housing unit; designated "C" status; guilty of one or more Division A or Division B offenses within the last twelve months; or guilty of narcotics trafficking while incarcerated in a state prison."

[5]Respondent Pro-Family Advocates is a statewide group of inmates, families of inmates, taxpayers and others concerned with the policies of California correctional agencies which affect family visits between inmates and their families.

[6]We have taken judicial notice of records filed in an earlier appeal involving these parties. (*Pro-Family Advocates* v. *Gomez* (June 19, 1995) A068298 [nonpub. opn.].) (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) In June 1995, the appeal was dismissed as moot. A related petition for writ of supersedeas was also denied. (*Pro-Family Advocates* v. *Gomez*

ex post facto grounds, inter alia. (U.S. Const., art. I, § 9, cl. 3, Amend. XIV; Cal. Const., art. I, § 7, subd. (a).) By then, a preliminary injunction enjoined Gomez from enforcing the earlier regulation. In April 1995, Pro-Family was permitted to amend its complaint to challenge the 1995 regulation, as well. In May 1995, its motion to modify the existing preliminary injunction was granted in most respects,[7] precluding Gomez from enforcing the 1995 regulation.[8]

## II. PRELIMINARY DISCUSSION

### A. *Standard of Review*

█ The decision to grant a preliminary injunction rests in the sound discretion of the trial court. A trial court abuses its discretion if it exceeds the bounds of reason or contravenes uncontradicted evidence. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121]; see *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840] [injunction denied].) If the evidence conflicts, we must construe the evidence in the light most favorable to the trial court's decision. (See *Isthmian S. S. Co.* v. *Nat. Marine etc. Assn.* (1953) 40 Cal.2d 433, 434-435 [254 P.2d 578], overruled on another point in *Smyrniotis* v. *Local Joint Executive Bd.* (1966) 64 Cal.2d 30, 40, fn. 3 [48 Cal.Rptr. 725, 409 P.2d 949].) However, if no issue of fact is presented, we determine whether the granting of the preliminary injunction was error as a matter of law. (*Environmental Coalition of Orange County, Inc.* v. *AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513, 521 [115 Cal.Rptr. 59].) As the party challenging the injunction on appeal, Gomez bears the burden of showing a clear abuse of discretion or error of law. (See, e.g., *IT Corp.* v. *County of Imperial, supra,* at p. 69 [abuse of discretion].)

█ Trial courts evaluate two interrelated factors when deciding whether to issue a preliminary injunction. The first is the likelihood that the

_____

(Jan. 13, 1995) A068281 [nonpub. opn.].) Both the appeal and the petition involved a challenge to a 1994 regulation restricting eligibility for participation in the family visiting program. In August 1995, we found the legislative authorization for the 1994 regulation to be unconstitutional as a violation of the single subject rule. (See *Homan* v. *Gomez* (1995) 37 Cal.App.4th 597, 599-601 [43 Cal.Rptr.2d 647].) Although the appeal before us addresses only the 1995 regulation, the new regulation incorporates the substance of the 1994 regulation.

[7]The court refused to enjoin restrictions on the family visiting program as they relate to prisoners found guilty of serious in-prison disciplinary violations or violations related to the family visiting program.

[8]Gomez seeks to have this court augment the record on appeal to include the declaration of David Tristan. This declaration was part of the trial court record, as it was filed in support of Gomez's opposition to the motion to modify the preliminary injunction. The trial court referred to it when issuing its written ruling on the motion. We augment the record to include this declaration. (See Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

plaintiff will prevail at trial; the second, the interim harm that the plaintiff will likely sustain if the injunction were denied as compared to the harm that the defendant will likely suffer if the injunction were issued. ▮ ▬ ▬ By balancing the respective equities, the trial court should conclude whether—pending trial on the merits—the defendant should or should not be restrained from exercising his or her claimed right. (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at pp. 69-70; see *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 286 [injunction denied].)[9] ▮ On a typical appeal from an order granting a preliminary injunction, the question is whether both irreparable harm and the likelihood of prevailing on the merits are established. (See, e.g., *Loder* v. *City of Glendale* (1989) 216 Cal.App.3d 777, 782-783 [265 Cal.Rptr. 66]; *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 184, 188 [158 Cal.Rptr. 579]; see also *Cohen* v. *Board of Supervisors, supra,* at pp. 286-287.) Thus, if Pro-Family—as the party that sought the preliminary injunction—has no likelihood of prevailing on the merits at trial, then the trial court committed an error of law and we must reverse the order granting the preliminary injunction.

On appeal, our task is limited to an inquiry into the constitutionality of the challenged regulation. Any question of the wisdom of this regulation is beyond the scope of our review. (See, e.g., *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687] [courts rule only on legality of administrative regulation].)

## B. *Nature of Family Visits*

Before we consider the legal issues presented on appeal, it is helpful to keep in mind the nature of family visiting in prison. State administrative regulations require prison officials to establish a plan for family visits. Those regulations provide that family visits are to extend to as many inmates as possible, consistent with institutional security and the categorical restrictions that are being challenged in this action. (See Cal. Code Regs., tit. 15, § 3174.)

▮ Restrictions on an inmate's right of association are an inevitable product of confinement. By the very nature of imprisonment, inmates are necessarily separated from their families and friends. No legislation or case law makes these restrictions invalid. (*In re Cummings* (1982) 30 Cal.3d 870, 873 [180 Cal.Rptr. 826, 640 P.2d 1101, 29 A.L.R.4th 1207]; *In re Price*

---

[9]The trial court ruled on a motion for preliminary injunction, not a motion for summary judgment. The granting of a preliminary injunction does not constitute an adjudication on the merits of the complaint. (See *IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at p. 74, fn. 7; see also *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 286 [injunction denied].)

(1979) 25 Cal.3d 448, 452-453 [158 Cal.Rptr. 873, 600 P.2d 1330].) More relevant to the specific issue presented in this appeal, there is no substantive "right" to family visits. A prisoner's participation in the family visiting program is a privilege, not a right. (*In re Cummings*, *supra*, at p. 873; *Homan* v. *Gomez*, *supra*, 37 Cal.App.4th at p. 601; see Cal. Code Regs., tit. 15, § 3174, subd. (e).)

The California Supreme Court has stated that prison officials may ban family visits altogether. (*In re Cummings*, *supra*, 30 Cal.3d at p. 873; see *Homan* v. *Gomez*, *supra*, 37 Cal.App.4th at p. 601.) In this appeal, Gomez argues that if the law permits a total ban on family visits, that authority necessarily contains within it the power to enact a partial ban by restricting who may participate in the program. In a recent case, we acknowledged that this "reasoning might be relevant to an argument involving the amendment of regulations by the Department of Corrections . . . ." (*Homan* v. *Gomez*, *supra*, at pp. 601-602 [enabling legislation violated single subject rule].) It is against this background that we analyze the several constitutional issues posed in this appeal.

## III. Ex Post Facto

### A. *Facts*

 First, Gomez challenges the trial court's conclusion that the regulation constitutes an ex post facto application of law and that Pro-Family was thus entitled to a preliminary injunction. (U.S. Const., art. I, § 10, cl. 1, Amend. XIV; Cal. Const., art. I, § 9.) In its second amended complaint, Pro-Family challenged the 1995 regulation[10] on ex post facto grounds. It alleged that the regulation affected prisoners whose offenses arose before the promulgation of the regulation and made their punishment more burdensome. The regulation thus failed to give inmates fair warning of the effect of their convictions, it alleged. Pro-Family also alleged that the regulation inflicted arbitrary and vindictive retrospective legislation on inmates. It claimed that the regulation violated both the federal and state Constitutions' ex post facto clauses because it lacks a legitimate, nonpunitive governmental purpose such as security or safety. The trial court agreed, concluding that Pro-Family was likely to succeed on the merits of its ex post facto cause of action. It found that the regulation had a probable punitive effect and purpose.

---

[10]The Legislature has granted the Director of the Department of Corrections the authority to enact regulations for the administration of prisons. (Pen. Code, §§ 5054, 5058, subd. (a).)

## B. *Punishment*

█ The federal and state[11] constitutional prohibitions on ex post facto laws forbid a state from enacting any law imposing punishment in addition to that prescribed at the time that the criminal act was committed. The purpose of this prohibition is to assure that legislative acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. The ban also restrains governmental power by prohibiting arbitrary and potentially vindictive legislation. (*Miller* v. *Florida* (1987) 482 U.S. 423, 429-430 [96 L.Ed.2d 351, 359-360, 107 S.Ct. 2446]; *Weaver* v. *Graham* (1981) 450 U.S. 24, 28-29 [67 L.Ed.2d 17, 22-23, 101 S.Ct. 960]; *People* v. *McVickers, supra*, 4 Cal.4th at p. 85.) An ex post facto law is void. (See, e.g., *Weaver* v. *Graham, supra*, at p. 36 [67 L.Ed.2d at pp. 27-28].) Thus, the ex post facto clauses protect defendants from retrospective legislation with a punitive effect or purpose. (*People* v. *McVickers, supra*, at p. 85.)

In 1990, the United States Supreme Court restructured the analysis of ex post facto cases. As now interpreted, the ex post facto clause of the United States Constitution prohibits legislation that makes more burdensome the punishment for a crime after its commission. The court overruled a line of cases holding that a law violated the ex post facto clause if it eliminated a substantial protection in place when the offense was committed. (*People* v. *McVickers, supra*, 4 Cal.4th at pp. 84-85, 87; *Tapia* v. *Superior Court, supra*, 53 Cal.3d at pp. 293-294; see *Collins* v. *Youngblood* (1990) 497 U.S. 37, 42-52 [111 L.Ed.2d 30, 38-45, 110 S.Ct. 2715].) After *Collins* v. *Youngblood*, the focus of an ex post facto inquiry is not on whether a legislative change produces some ambiguous disadvantage or affects a prisoner's opportunity to take advantage of provisions for early release, but whether the change increases the penalty by which a crime is punished. (*California Dept. of Corrections* v. *Morales* (1995) __ U.S. __, __ [131 L.Ed.2d 588, 595-596, 115 S.Ct. 1597, 1602]; see *Collins* v. *Youngblood, supra*, at pp. 42-52 [111 L.Ed.2d at pp. 38-45].) Under *Collins*, the ex post facto clause prohibits not just a burden but a more burdensome punishment. (*People* v. *McVickers, supra*, at pp. 84, 87.)

█ The trial court concluded that the regulation probably constituted punishment within the meaning of the ex post facto clauses. On appeal, Gomez challenges this finding. The United States Supreme Court has not

---

[11]The ex post facto clause of the California Constitution is to be analyzed identically to that of the United States Constitution. (*People* v. *McVickers* (1992) 4 Cal.4th 81, 84, 86 [13 Cal.Rptr.2d 850, 840 P.2d 955]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 295-296 [279 Cal.Rptr. 592, 807 P.2d 434].)

specifically defined the term "punishment" for purposes of the ban on ex post facto laws. (See *People* v. *McVickers, supra,* 4 Cal.4th at pp. 84-85.) Cases defining punishment in this context focus on the policies behind the prohibition of such regulation—notice to individuals of punitive effects and the accountability of government for punitive purposes. (See *id.* at p. 87 [statute].)

■ Thus, courts look primarily to the effect and purpose of a regulation to determine if it is punitive. (See *People* v. *McVickers, supra,* 4 Cal.4th at pp. 86-87 & fn. 1 [statute].) We inquire into legislative purpose because the government's motivation is central to the issue of whether the regulation is vindictive or arbitrary and hence prohibited by the ex post facto clauses. (See *id.* at p. 87, fn. 1.) The purpose of the regulation assists us in determining whether the rule is penal. A regulation is nonpenal if it imposes a disability—not in order to punish—but to accomplish some other legitimate governmental purpose. (See *id.* at p. 85.) When a regulation has a legitimate, nonpunitive governmental purpose,[12] it is not considered punitive even though there is a disadvantageous effect to the prisoner. (See *id.* at p. 86.) This is so even if the challenged regulation also has a penal purpose. (See *id.* at p. 87.)

■ In support of its motion to modify the preliminary injunction, Pro-Family offered the Department of Corrections' stated position that the regulation was more consistent with its "policy of accountability for serious offenders" as evidence of its punitive purpose. In opposition to the motion, Gomez proffered evidence that institutional security and public safety were also reasons for the regulation. The trial court appears to have concluded from this evidence that the purpose of the regulation was solely punitive. However, this conclusion was based on only part of the evidence, ignoring other aspects of the same departmental notices and the sworn declaration of a prison official cited by the trial court in support of its ruling. Viewed as a whole, the evidence supports the conclusion that—although the regulation has a punitive effect and one of its purposes may be penal—it also has legitimate, nonpunitive governmental purposes. The maintenance of institutional security is unquestionably a legitimate state interest. (*In re Price, supra,* 25 Cal.3d at p. 453; see *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 561 [41 L.Ed.2d 935, 953-954, 94 S.Ct. 2963] [due process case].) Considering *all* of the evidence that was before the trial court, we conclude that the regulation did not constitute "punishment" within the meaning of the ex post facto clauses. (See *People* v. *McVickers, supra,* 4 Cal.4th at pp. 84-87.)

---

[12] The mere assertion of a nonpunitive regulatory purpose does not end our inquiry. We must test the proffered purpose to determine if it is consistent with the regulation. (See *People* v. *McVickers, supra,* 4 Cal.4th at p. 88.)

This conclusion seems especially sound, given that our Supreme Court has already indicated that the family visiting program may be eliminated in its entirety. (See *In re Cummings, supra*, 30 Cal.3d at p. 873; see also *Homan* v. *Gomez, supra*, 37 Cal.App.4th at p. 601.) As these visits may be totally banned, it only stands to reason that the department necessarily has the authority to restrict participation in the family visiting program. For all these reasons, we are satisfied that the challenged regulation does not constitute an ex post facto law within the meaning of the federal or state constitutional prohibition on ex post facto laws.

## IV. EQUAL PROTECTION

 The trial court also concluded that Pro-Family was likely to prevail on the merits of its equal protection cause of action.[13] (U.S. Const., Amend. XIV; Cal. Const., art. I, § 7, subd. (a).) On appeal, Gomez disputes this finding.

 First, we note that Pro-Family does not contend that suspect classifications or fundamental interests are involved in this case. Its claim that the equal protection issue turns on whether the regulation is "arbitrary and capricious or bears some reasonable relationship to a legitimate state interest" satisfies us that the rational relationship test applies, rather than the more stringent strict scrutiny test. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10] [legislation].) The rational basis test applies to a regulation that differentiates or discriminates between classes of persons. The regulation is presumed to be constitutional. (See *id.* at p. 16.) When challenged on equal protection grounds, we must determine if the distinctions drawn by the regulation bear some rational relationship to a proper state purpose. (See *Prison Law Office* v. *Koenig* (1986) 186 Cal.App.3d 560, 566 [233 Cal.Rptr. 590] [legislation]; see also *D'Amico* v. *Board of Medical Examiners, supra*, at p. 16.) As long as the classification does not permit one to exercise a privilege while refusing it to another of like qualifications under like conditions and circumstances, then it is consistent with equal protection. (*Id.* at p. 16.) Under the rational basis test, the burden of proving an invalid classification falls on Pro-Family—the party that challenges the regulation. (See *id.* at p. 17.)

The regulation challenged by Pro-Family precludes family visits for those inmates convicted of a violent offense involving a minor or a family

---

[13]Our state constitutional guarantee of equal protection is substantially similar to that contained in the United States Constitution. Federal and state analysis of equal protection claims is substantially the same. (*Cohan* v. *Alvord* (1984) 162 Cal.App.3d 176, 181 [208 Cal.Rptr. 421].)

member; convicted of any sex offense; sentenced to life imprisonment without the possibility of parole; sentenced to life without a parole date established by the Board of Prison Terms; designated Close A or Close B custody; designated a condemned inmate; assigned to a reception center, an administrative segregation unit, or a security housing unit; and designated "C" status.[14] (Cal. Code Regs., tit. 15, § 3174, subd. (e)(1), (2); see fn. 4, *ante.*) These specified inmates appear to pose a greater danger to others than those prisoners incarcerated for other offenses. The protection of the safety of the public—particularly those family members who would be visiting these inmates in an unsupervised setting—is a legitimate interest that state prison officials may consider when determining which inmates may participate in the family visiting program. The classified inmates also appear to be among those who pose the greatest risk to institutional security. Maintaining institutional security is a legitimate interest for prison officials to take into account when promulgating regulations about family visits that take place in an unsupervised setting. (See *In re Price, supra,* 25 Cal.3d at p. 453; see also pt. III, *ante.*)

That there might be other inmates who might also pose a danger to others or a risk to institutional security who *are* permitted to participate in family visits does not invalidate the regulation. ■ A regulation does not violate equal protection merely because its classifications are imperfect. If the classification has some reasonable basis, then it does not violate equal protection simply because in practice it results in some inequality. (*Mitchell v. Swoap* (1973) 35 Cal.App.3d 879, 888 [113 Cal.Rptr. 75].) ■ We are satisfied that the regulation has a reasonable basis. As its classifications are rationally related to a legitimate state purpose, the regulation does not violate the equal protection clauses of the United States or California Constitutions.

## V. Conclusion

We find no constitutional violation posed by the enactment and enforcement of this regulation. We make no judgment on the wisdom or efficacy of the regulation because that is not our role. Such a judgment can only be made by the Director of the Department of Corrections. The director has

---

[14]The regulation also restricts the family visiting program for prisoners found guilty of serious in-prison disciplinary violations or family visit violations. (See Cal. Code Regs., tit. 15, § 3174, subd. (e)(1), (2).) However, as the trial court refused to enjoin Gomez from enforcing this aspect of the regulation and Pro-Family has not cross-appealed to challenge this ruling, only the remaining part of the regulation is before us on appeal.

Condemned inmates, those assigned to a reception center, an administrative segregation unit, or a security housing unit; and those designated "C" status have always been denied family visiting privileges.

been given that authority by our Legislature "pursuant to a delegation of legislative power" (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d at p. 411) to enact regulations for the administration of prisons. As we conclude that Pro-Family has no likelihood of prevailing on the merits of its ex post facto or equal protection causes of action at trial, the trial court necessarily erred in granting its motion for a preliminary injunction on the grounds that it did. (See fn. 8, *ante.*)

The order modifying the preliminary injunction is reversed and the matter is remanded for further proceedings in accordance with this opinion.

Anderson, P. J., and Hanlon, J., concurred.

A petition for a rehearing was denied July 31, 1996, and respondent's petition for review by the Supreme Court was denied September 18, 1996. Mosk, J., was of the opinion that the petition should be granted.