[No. D044131. Fourth Dist., Div. One. Nov. 24, 2004.]

ROBIN J., Plaintiff and Respondent, v.
SUPERIOR COURT OF SAN DIEGO COUNTY, Defendant and
Respondent;
LUCAS J., a Minor, etc., et al., Real Parties in Interest and Respondents;
DEPARTMENT OF CORRECTIONS, Real Party in Interest and Appellant.

COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Julie L. Garland and Michelle Des Jardins, Deputy Attorneys General, for Real Party in Interest and Appellant.

Christopher Blake for Plaintiff and Respondent Robin J.

No appearance for Defendant and Respondent.

Denise M. Rudasill for Real Parties in Interest and Respondents Lucas J. and Joshua J.

Elizabeth A. Missakian for Real Party in Interest and Respondent Vaughn J.

OPINION

AARON, J.—

I.

INTRODUCTION

The California Department of Corrections (CDC) appeals from an order of the juvenile court declaring section 3173.1 of title 15 of the California Code of Regulations (Regulation 3173.1) invalid and enjoining the CDC from enforcing the regulation to prevent visitation between inmate Vaughn J.[1] and

---

[1] The parties' first names are used to protect the identities of the juveniles involved and for purposes of clarity. No disrespect is intended.

his sons Lucas J. and Joshua J. Regulation 3173.1 prohibits inmates who have been incarcerated for committing certain sexual offenses from participating in visits with minor children. On appeal, the CDC challenges whether the juvenile court had jurisdiction to order visitation in this case and whether the juvenile court exceeded its authority in declaring the regulation in question invalid pursuant to a petition filed under Welfare and Institutions Code section 362.6. We conclude that the superior court acted beyond the scope of its authority in addressing the validity of the regulation. We further conclude that because the court had no authority to act pursuant to Welfare and Institutions Code section 362.6 and because the court followed improper procedures in invalidating the regulation, the juvenile court did not have the authority under the circumstances of this case to order that the CDC allow visitation between Vaughn J. and his sons.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Robin J. petitioned the San Diego County Juvenile Court to permit her two minor sons, Lucas and Joshua, to visit their incarcerated father, Vaughn, pursuant to Welfare and Institutions Code section 362.6.

Vaughn was sentenced to nine years four months in state prison on September 6, 2002, as a result of convictions for one count of attempted lewd acts on a child (Pen. Code, §§ 288, subd. (a), 664), one count of attempted forcible lewd acts on a child (Pen. Code, §§ 288, subd. (b), 664), and 20 counts of distributing/bringing child pornography into the state (Pen. Code, § 311.1, subd. (a)). Vaughn was previously convicted in 1984 of three counts of lewd acts on a child (Pen. Code, § 288, subd. (a)).

Lucas and Joshua were not the victims of Vaughn's crimes. Following Vaughn's arrest, child protective services interviewed the boys and made a home visit. No evidence of misconduct was found with respect to either child, and the boys were permitted to remain with Robin, their mother. Both sons visited their father at Pleasant Valley State Prison every six weeks without incident until October 2003.

In October 2003, prison authorities elected to prohibit Lucas and Joshua from visiting Vaughn. Prison officials relied on Regulation 3173.1 to prevent the boys from being able to visit their father. Regulation 3173.1, which became effective on March 20, 2003, prohibits inmates who have been incarcerated for committing certain sexual offenses from receiving visits from minor children, regardless of whether or not the children were victims of the

offenses. Regulation 3173.1 makes an exception for child victims who have been permitted to visit by order of the juvenile court.[2]

Robin was informed by the prison authorities that if she wanted the visits to continue, she would have to get an order from the juvenile court authorizing visits between her children and Vaughn.

On December 29, 2003, Robin filed a petition with the juvenile court on behalf of Lucas and Joshua requesting an order allowing the boys to visit their father pursuant to section 362.6 of the Welfare and Institutions Code.[3] A hearing on the petition was held on January 29, 2004, after which the court took the matter under submission. The CDC was not notified of the hearing, and it was not represented at the hearing.

On February 4, 2004, the trial court issued a temporary order permitting Lucas and Joshua to visit Vaughn in prison. The court also issued an order to show cause directed to the CDC to show why Regulation 3173.1 should not be held invalid as conflicting with Penal Code section 1202.05.

The court held a hearing on the order to show cause on March 9, 2004. The CDC was present with counsel. On April 5, 2004, the trial court issued a formal order granting Robin's petition, declaring Regulation 3173.1 invalid, and enjoining the CDC from enforcing the regulation at all facilities throughout the state. The court ordered that visits by Lucas and Joshua with their

---

[2] Regulation 3173.1 states: "Visiting with minors shall be prohibited for any inmate sentenced to prison for violating Penal Code section(s) 261, 264.1, 266c, 273d, 285, 286, 288, 288a, 288.5, or 289 unless specifically authorized by a juvenile court, pursuant to Welfare and Institutions Code section 362.6. Inmates may be prohibited from having contact or non-contact visits where substantial evidence (e.g., court transcripts, police or probation officer reports or parole revocation hearing findings describing the misconduct) of the misconduct described in section 3177 [subdivision] (b)(1) exists, with or without a criminal conviction."

[3] Welfare and Institutions Code section 362.6 provides: "(a) When a hearing is requested pursuant to Section 1202.05 of the Penal Code, the sentencing court shall forward a copy of the request to the child protective services agency (CPS), or the appropriate entity, in the county in which any related dependency matters as to the affected child victim have been heard or to the county in which the child victim resides. CPS, or the appropriate entity, shall initiate a hearing to determine whether visitation between the child victim and the incarcerated person would be in the best interests of the child victim. If the court determines that visitation with the incarcerated person is in the best interests of the child victim, CPS, or the appropriate entity, shall notify the Department of Corrections to provide for contact or visitation, or both, as ordered by the court. [¶] (b) The court, if visitation is allowed, may impose whatever safeguards or restrictions it deems appropriate to protect the child victim. [¶] (c) The court's order shall be transmitted to all parties and to the Department of Corrections. [¶] (d) Any party may return to the juvenile court at any time prior to the child victim's 18th birthday and request modification of the court's order based on a change of circumstances. For these purposes, the juvenile court shall retain jurisdiction over the matter until the child victim reaches the age of 18 years."

father could resume, effective immediately. The court stayed for 10 days the portion of the order declaring Regulation 3173.1 invalid in order to allow the CDC an opportunity to seek review.

On April 15, 2004, the CDC filed a petition for a writ of supersedeas and a notice of appeal. In the writ petition, the CDC requested a stay of the April 5, 2004 order to the extent the order prohibited the CDC from enforcing Regulation 3173.1 throughout the state. This court issued a temporary order staying the April 5, 2004 order, as requested by the CDC, but did not stay that portion of the order permitting Lucas and Joshua to visit their father.

On May 12, 2004, this court, on its own motion, determined that the case should proceed as a civil case, and set a briefing schedule for the appeal. On June 2, 2004, this court granted the CDC's writ petition and directed the parties to address, in addition to the issues raised on appeal, whether the juvenile court had the authority to issue an order to show cause to the CDC on its own motion.

III.

DISCUSSION

The CDC contends that the juvenile court exceeded its jurisdiction in this case because, under Welfare and Institutions Code section 362.6, a juvenile court possesses the authority to order visitation *only* when the child seeking visitation has been prohibited from visiting the incarcerated individual by a sentencing court pursuant to Penal Code section 1202.05.[4] In this situation, the children seeking visitation were prohibited from visiting the incarcerated individual pursuant to Regulation 3173.1, a general CDC regulation that prohibits in-person visitation between inmates convicted of certain sexual offenses and all minor children. Because consideration of these matters requires only the interpretation of statutes and regulations, the issues before us present pure questions of law which we review de novo. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

We agree with the CDC to the extent it argues that the juvenile court did not possess the authority to order visitation between Lucas and Joshua and

---

[4] Penal Code section 1202.05, subdivision (a) provides: "Whenever a person is sentenced to the state prison on or after January 1, 1993, for violating Section 261, 264.1, 266c, 285, 286, 288, 288a, 288.5, or 289, and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and the child victim. . . . If any parent, adoptive parent, or legal guardian of the child victim, or the child victim objects to the court's order, he or she may request a hearing on the matter. Any request for a hearing on the matter filed with the sentencing court shall be referred to the appropriate juvenile court pursuant to Section 362.6 of the Welfare and Institutions Code."

their father pursuant to Welfare and Institutions Code section 362.6. However, we disagree with the CDC to the extent it argues that the juvenile court's error was in basing its jurisdiction on Welfare and Institutions Code section 362.6. The juvenile court quite clearly did not authorize visitation pursuant to Welfare and Institutions Code section 362.6. Rather, the court ordered visitation between Vaughn and Lucas and Joshua only after it concluded that Regulation 3173.1 was void for exceeding the scope of Penal Code section 1202.05.

We conclude, however, that the juvenile court acted beyond the scope of its authority in reaching the merits of the validity of Regulation 3173.1 on a petition brought pursuant to Welfare and Institutions Code section 362.6. The court did not have the authority, under the circumstances of this case, to enjoin the CDC from enforcing its regulation, or to order visitation between Vaughn and his sons.

A. *The Juvenile Court Did Not Have the Authority to Order Visitation Pursuant to Welfare and Institutions Code Section 362.6*

The only authority a juvenile court has to order visitation between an inmate and a juvenile is pursuant to Welfare and Institutions Code section 362.6. Under that section, such action by the juvenile court is authorized only when a sentencing court has previously prohibited the visitation pursuant to Penal Code section 1202.05. Thus, unless a sentencing court has prohibited visitation pursuant to Penal Code section 1202.05, a juvenile court lacks the authority to order visitation pursuant to Welfare and Institutions Code section 362.6.

The trial court acknowledged that it had no authority to order visitation between Vaughn and his sons pursuant to Welfare and Institutions Code section 362.6: "I'm going to issue an order that allows visitation, and I do this not under section 362 and not based on a finding that the best interests of the children are served by the visitation because we haven't done that whole process. [¶] . . . But I'm making this order based on the fact that it appears to me that the statute is, in fact, invalid and that there seems to be a pattern of an attempt to deny visitation under this invalid statute, and it, I think, needs to be addressed." We agree with the juvenile court's assessment that it had no power to order visitation in this case pursuant to a petition filed under Welfare and Institutions Code section 362.6. In a situation involving juveniles who were *not* the victims of the incarcerated individual's crimes, as in this case, Welfare and Institutions Code section 362.6 does not apply and may not be used to order visitation between an inmate and nonvictim children.

## B. *The CDC's Actions Did Not Confer Jurisdiction on the Court Pursuant to Welfare and Institutions Code Section 362.6*

Vaughn, Robin, Lucas and Joshua all argue that even if the juvenile court did not originally have jurisdiction to order visitation pursuant to Welfare and Institutions Code section 362.6, the CDC should be estopped from asserting that the juvenile court lacked jurisdiction because the CDC referred Robin to the juvenile court in the first instance, and suggested that she petition the court under the process envisioned in Welfare and Institutions Code section 362.6. We disagree.

Jurisdiction over the subject matter in this case cannot be conferred upon the court merely by the CDC's suggestion to a custodial caregiver that she seek an order from the juvenile court pursuant to Welfare and Institutions Code section 362.6.[5] Although a party who erroneously invokes the jurisdiction of a court may be estopped from later arguing that the court lacked jurisdiction (see *Remillard Brick Co. v. Dandini* (1941) 47 Cal.App.2d 63, 66 [117 P.2d 432]), such is not the case here. The CDC did not institute any action before the juvenile court in this case. Rather, the CDC suggested to Robin, through a form letter, that the only way the CDC would allow her children to visit with their father was by way of an order from the juvenile court pursuant to Welfare and Institutions Code section 362.6. The CDC's reference to the only available method for seeking court-imposed visitation under Regulation 3173.1 does not serve to invoke the jurisdiction of the court. In fact, the CDC was not even a party to the case, and was brought into the matter only pursuant to the court's order to show cause. Under these circumstances, the CDC is not estopped from challenging the court's jurisdiction.

## C. *The Court Erred in Invalidating Regulation 3173.1 on the Ground That It Exceeds the Scope of Penal Code Section 1202.05*

The trial court concluded that "section 3173.1 impermissibly enlarges the scope of Penal Code section 1202.05 and Welfare and Institutions Code section 362.6, and is invalid." The court determined that the CDC had improperly expanded the scope of Penal Code section 1202.05 by denying sex offenders the right to visit with any child, and not just their child victims.

---

[5] The juvenile court also recognized this issue, stating ". . . I don't think even the erroneous referral by the department of corrections can vest this court with jurisdiction that the court doesn't otherwise have."

The court noted that "this is the fourth such case where this has occurred in the last year in this court, that is, where petitioners have come to court after having visitation denied by the department of corrections and after having been informed that they should seek relief under [Welfare and Institutions Code] section 362[.6]."

However, the court was incorrect in asserting that Regulation 3173.1 must fall within the "scope" of Penal Code section 1202.05 in order to be valid.

■ A regulation is impermissible only if it exceeds the scope granted by the relevant *enacting* legislation (*California Teachers Assn. v. Commission on Teacher Credentialing* (1992) 7 Cal.App.4th 1469, 1475 [10 Cal.Rptr.2d 126]) *or* if it conflicts with any act of the Legislature (*American Airlines v. Los Angeles County* (1976) 65 Cal.App.3d 325, 332 [135 Cal.Rptr. 261]). " ' "Administrative regulations that alter or amend the [authorizing] statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations." [Citation.]' " (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ Regulation 3173.1 was not promulgated pursuant to either Penal Code section 1202.05 or Welfare and Institutions Code section 362.6. Rather, the relevant enacting legislation authorizing the CDC to promulgate regulations regarding the administration of state prisons, including visitation rules, is Penal Code section 5058. This provision of the Penal Code provides in relevant part: "The director may prescribe and amend rules and regulations for the administration of the prisons and for the administration of the parole of persons sentenced under Section 1170 except those persons who meet the criteria set forth in Section 2962. The rules and regulations shall be promulgated and filed pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, except as otherwise provided in this section and Sections 5058.1 to 5058.3, inclusive. All rules and regulations shall, to the extent practical, be stated in language that is easily understood by the general public." (Pen. Code, § 5058, subd. (a).)

■ Regulation 3173.1 does not improperly expand upon the authority granted to the CDC to create rules for the administration of the state prisons pursuant to Penal Code section 5058, nor does it conflict with this provision. It is widely accepted that the CDC has the authority to enact reasonable rules and regulations regarding visits between inmates and their families. (*Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1686 [54 Cal.Rptr.2d 600].) A regulation limiting visitation between inmates and their families falls within the scope of the powers granted to the CDC under Penal Code section 5058, the enacting legislation.[6]

■ Because Regulation 3173.1 was not intended to effectuate the Legislature's command set forth in Penal Code section 1202.05, the differences between the regulation and this statutory section cited by the juvenile court as

---

[6] We do not conclude in this appeal that Regulation 3173.1 is "reasonable." That issue is not before us. Rather, we merely acknowledge that the CDC has the authority to promulgate rules regarding visitation pursuant to its authority to administer state prisons.

reasons to invalidate the regulation are irrelevant.[7] Further, Regulation 3173.1 does not conflict with either Penal Code section 1202.05 or Welfare and Institutions Code section 362.6 in that the regulation does not permit visitation between a sexual offender and a young victim despite the existence of a sentencing court's order preventing such visitation. In fact, it disallows visitation between sexual offenders and children entirely. Nor does it not prohibit visitation between a sexual offender and a young victim despite a juvenile court order allowing the visitation. In fact, the regulation allows for an exception to the prohibition against visits between certain sexual offender inmates and minor children in situations in which a juvenile court has ordered, pursuant to Welfare and Institutions Code section 362.6, that the child victim be allowed to visit with the sexual offender. In this way, the regulation is written so as to avoid any conflict with Penal Code section 1202.05 and Welfare and Institutions Code section 362.6—statutes that specifically authorize the courts to determine when a prisoner may or may not visit with the child victim of the prisoner's sex crime.

We recognize that the combined effect of Penal Code section 1202.05, Welfare and Institutions Code section 362.6, and Regulation 3173.1 is that the only children who may be allowed to visit with inmates convicted of certain sexual offenses are those children who were the victims of the sexual crimes. This result is counterintuitive, at best, since it permits inmates access to their former victims while denying them access to juvenile family members who were not their victims.[8] However, although the combined effect of Regulation 3173.1, Penal Code section 1202.05, and Welfare and Institutions Code section 362.6, challenges the bounds of common sense, this effect alone does not mean that the regulation is in conflict with either Penal Code section 1202.05 or Welfare and Institutions Code section 362.6. In fact, the regulation carefully carves out an exception for orders arising out of Welfare and Institutions Code section 362.6 so that it does not conflict with these statutes.[9]

---

[7] Among the differences noted by the court are Regulation 3173.1's inclusion of additional offenses other than those covered by the statute, the fact that the offense may have been a prior conviction rather than the basis for the incarceration, and the fact that no conviction for sexual misconduct is necessary under the regulation so long as there is evidence of sexual misconduct.

[8] We further address the incongruous effect of Regulation 3173.1 at part D, *post*.

[9] We grant the CDC's unopposed request for judicial notice of the legislative history of Assembly Bill No. 3560 (1991–1992 Reg. Sess.), the legislation that implemented Penal Code section 1202.05 and Welfare and Institutions Code section 362.6.

D. *The Trial Court Did Not Have the Authority to Reach the Merits of the Question of the Validity of Regulation 3173.1*

The trial court erred in addressing the merits of whether the regulation in question is reasonably related to a legitimate penological interest. Because this action was instituted by a petition for an order granting visitation pursuant to Welfare and Institutions Code section 362.6—a petition the juvenile court recognized it had no authority to address—this action was the incorrect procedural vehicle by which to challenge the validity of Regulation 3173.1. As such, the juvenile court acted beyond the scope of its authority in turning a Welfare and Institutions Code section 362.2 petition, which is meant to address only the "best interests" of a child, into a direct action challenging a CDC regulation. The court's action was procedurally improper.

The court determined that it had jurisdiction to rule on the validity of the CDC's regulation pursuant to section 11350 of the Government Code, which grants a superior court the authority to rule on the validity of an administrative regulation. Section 11350 provides in relevant part: "(a) Any interested person may obtain a judicial declaration as to the validity of any regulation or order or repeal by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure. The right to judicial determination shall not be affected by the failure either to petition or to seek reconsideration of a petition filed pursuant to Section 11340.7 before the agency promulgating the regulation or order of repeal. The regulation or order of repeal may be declared to be invalid for a substantial failure to comply with this chapter, or, in the case of an emergency regulation or order of repeal, upon the ground that the facts recited in the statement prepared pursuant to subdivision (b) of Section 11346.1 do not constitute an emergency within the provisions of Section 11346.1." None of the respondents here brought an action for declaratory relief in accordance with the Code of Civil Procedure. Had they done so, the CDC would have been a party to the action from the beginning. However, the CDC was not involved in this action until the court issued an order to show cause to the CDC, requiring it to "show cause why section 3173.1 of Title 15 of the California Code of Regulations should not be found by this court to be void." This procedural tactic left the parties and the juvenile court unable to properly address whether Regulation 3173.1 is rationally related to a legitimate penological goal.

Generally, a party challenging the validity of a regulation bears the burden of demonstrating that the regulation fails the test set out in *Turner v. Safley* (1987) 482 U.S. 78 [96 L.Ed.2d 64, 107 S.Ct. 2254] (*Turner*). This is because a regulation is presumed to be valid. (See *Pro-Family Advocates v. Gomez, supra,* 46 Cal.App.4th at p. 1685.) In this situation, however, the

court improperly placed the burden of proving the *validity* of its regulation on the CDC through its order to show cause.

The improper procedural posture of this case is also demonstrated by the fact that in an appropriate proceeding, the CDC, as the promulgator of the challenged regulation, would be a party to any action challenging the validity of its regulation. The fact that the CDC was brought into this case only through the court's order to show cause limited the CDC's ability to fully participate in defending its regulation on the merits. Specifically, the court's order to show cause did not ask the CDC to address the validity of Regulation 3173.1 under the four-prong *Turner* test. Rather, by stating in the order to show cause, "Section 3173.1 of Title 15 of the California Code of Regulations appears to enlarge the class of children who cannot visit with inmates from child victims to all children," the court limited the issue to be addressed by the CDC to whether the regulation improperly expanded the scope of Penal Code section 1202.05. Nevertheless, the juvenile court addressed the *Turner* factors in its final order invalidating Regulation 3173.1, and concluded that the regulation was not reasonable.

For these reasons, we must conclude that the trial court erred in declaring Regulation 3173.1 invalid as not reasonably related to the penological interests advanced by the CDC for its existence. A petition seeking an order for visitation that would be in the "best interests" of a child is, unfortunately, not the proper procedure by which to challenge the validity of a regulation. The proper procedure by which Robin could challenge the reasonableness of a regulation would be to file a declaratory action in the superior court.

We feel it necessary to mention that we understand the juvenile court's frustration in this case. We, too, recognize the seeming absurdity of prohibiting nonvictim children from visiting with their incarcerated parents while allowing the children who were the victims of certain inmates to visit with those who victimized them.[10] For this reason, we want to be very clear that our ruling here is not meant to suggest that, in the proper procedural context,

---

[10] At the time Penal Code section 1202.05 and Welfare and Institutions Code section 362.6 became law, the Legislature was aware that the general practice in prisons was to allow all inmates visitation with children. These particular code provisions were passed in order to prevent inmates from having access to their child victims except where a juvenile court had determined that it would be in the child's best interests to visit with the inmate. Against the backdrop of allowing visitation between inmates and children, these statutory provisions made sense as a method to protect those children most likely to be victimized again by an incarcerated inmate. However, Regulation 3173.1 altered this backdrop in that it changed the general rule from one allowing all inmates visitation with children to one prohibiting certain inmates visitation with children. With the background rule changed, the impact of Penal Code sections 1202.05 and Welfare and Institutions Code section 362.6 was essentially reversed. Whereas, prior to Regulation 3173.1, these statutory provisions worked to prevent inmates from visiting with their child victims in all but a few situations in which the children's

a challenge to the validity of Regulation 3173.1 would not be well received. We, like the juvenile court, have serious doubts as to whether Regulation 3173.1 bears any rational relationship to the CDC's stated penological interest in "protecting children in prison visiting rooms." We further question whether Regulation 3173.1 allows for any reasonable alternative to personal visits between a child and an incarcerated parent. Although we do not address these issues here, we do not intend our silence on the issue to be interpreted as signaling to either party that we think the issues to be unworthy of review. Rather, we conclude that there is simply no legitimate way for us to bypass the procedural hurdles placed before us by the unusual posture presented by this case in order to reach those issues.

### E. *A Petition Brought Pursuant to Welfare and Institutions Code Section 362.6 Cannot Be Considered a Petition for a Writ of Habeas Corpus*

■ Respondents Vaughn, Robin, Lucas and Joshua urge us to "consider" the petition on behalf of Lucas and Joshua filed with the juvenile court as a petition for a writ of habeas corpus. We recognize that a writ of habeas corpus may be used to attack the conditions of confinement that occur after a conviction, even if one is not challenging the validity of the conviction itself. (See *Frias v. Superior Court* (1975) 51 Cal.App.3d 919, 920 [124 Cal.Rptr. 616]). However, we decline to "consider" the petition in this case a petition for a writ of habeas corpus because we can find no authority or justification that would support our doing so. Further, the petition filed in this case fails to meet many, if not all, of the statutory requirements for seeking a writ of habeas corpus.

First, the parties have provided no case law or statutory authority to support the contention that our "considering" a petition filed pursuant to Welfare and Institutions Code section 362.6 to be a petition for a writ of habeas corpus would be a proper course of action. Robin suggests that *Clovis Ready Mix Co. v. Aetna Freight Lines* (1972) 25 Cal.App.3d 276, 282 [101 Cal.Rptr. 820], supports the theory that we may "consider" her petition as a petition for a writ of habeas corpus. We disagree. *Clovis* stands for the proposition that an appellate court may consider a premature appeal—one improperly brought prior to final judgment—as a petition for a writ of mandate. (*Ibid.*) In that case, the court acknowledged that to do anything other than consider the premature appeal as a petition for an extraordinary writ would be a waste of resources. However, there are significant differences between the situation in *Clovis* and the situation before us. In *Clovis*, the issue whether to consider an improper appeal as a petition for a writ was, in

---

interests were shown to be served by allowing visitation, after Regulation 3173.1 these statutory provisions now work to make it so that the *only* children who may ever visit certain inmates are the child victims of those inmates.

the first instance, a matter for the appellate court to determine. In contrast, here, the determination as to whether to view the petition filed under Welfare and Institutions Code section 362.6 as a habeas petition rested originally with the trial court, and that court did not treat Robin's petition as a habeas petition. It would be improper for us to determine, on appeal, that the petition should be considered to be something other than what the trial court considered it. Our task is to determine whether the juvenile court erred. We cannot go back and "deem" the section 362.6 petition a habeas petition.

■ Further, we doubt that the trial court would have been correct if it had considered Robin's petition to be a habeas petition. Robin's petition seeks visitation on behalf of her children. Under such a petition, Robin must demonstrate that the visitation she is requesting would be in the "best interests" of her children. In contrast to this type of petition, a petition for a writ of habeas corpus must be brought by an inmate and must seek to avail the rights of the inmate, not those of his family or any other person. In order to prevail, the inmate must demonstrate that the challenged policy constituted an illegal restraint upon his fundamental rights. Thus, the standards that apply to a section 362.6 petition are fundamentally different from those that apply to a habeas petition.

■ There also exist statutory requirements for pursuing a petition for a writ of habeas corpus that Robin's petition does not meet. (See Pen. Code, §§ 1474–1478.) In addition to requiring that the person on whose behalf the petition is filed be "imprisoned or restrained of his liberty," the Penal Code requires that the petition be directed to and served on the person having custody of the petitioner. (Pen. Code, §§ 1474, 1477, 1478.) None of these requirements was met by Robin's petition and, logically, there would be no reason her petition would meet these requirements. Significantly, the CDC was not brought into this action until the juvenile court issued its order to show cause. As we discussed *ante*, by bringing in the CDC through an order to show cause why its regulation was not invalid, the juvenile court placed improper burdens on the CDC to demonstrate the legality of its regulation before there had been a prima facie showing that the regulation was illegal. For all of these reasons, we decline to "consider" Robin's petition as a petition for a writ of habeas corpus.

IV.

CONCLUSION

The juvenile court acted beyond the scope of its authority by reaching the merits of the validity of Regulation 3173.1 on a petition brought pursuant to Welfare and Institutions Code section 362.6. As a result, the court lacked the

authority to enjoin the CDC from enforcing the regulation. Additionally, the juvenile court was without jurisdiction to order visitation between Vaughn and his sons Lucas and Joshua pursuant to Welfare and Institutions Code section 362.6. The court's order must therefore be reversed.

## V.

## DISPOSITION

The order of the juvenile court is reversed.

Benke, Acting P. J., and Nares, J., concurred.

The petition of respondent Robin J. for review by the Supreme Court was denied February 16, 2005.